## CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

HALL *vs.* EMERSON'S CURATOR AND HEIRS.*

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

The right of indemnity accompanies the right of property. So where a person has a claim on government for meritorious services rendered, or losses incurred, and dies before or after a treaty is made, or law passed, and compensation is subsequently decreed or given, it will be assets, and distributable as such, in the hands of his executors or administrators.

A person who, in his life time performs services useful to government, and expends his money, is decreed to have an equitable claim or right to be remunerated for these services and expenditures. This right is susceptible of being assigned and transferred, and at his death it is transmitted

WESTERN DIST.
*March,* 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

11    1
114    67

---

*A writ of error to the Supreme Court of the United States has been allowed in this case, under the provisions of the 25th section of the judiciary act of 1789, on the ground that the decision is against a *right* claimed under an act of congress.

EASTERN DIST.   to his succession, to those who are appointed by law to inherit his pro-
February, 1837.   perty, coupled with the obligation of paying his debts.

HALL   So, where Congress passed a law authorizing a certain fund arising from the
vs.   meritorious services of a deceased person, to be paid over to his *legal*
EMERSON'S CU-
RATOR & HEIRS.   *representatives :  Held*, that it passed to his curator as the legal represen-
tative, standing in his rights by authority of law, and liable in his hands
for the debts of the deceased.

The plaintiff having obtained a judgment against the late
Wm. Emerson, during his life time in the United States
District Court, for the Eastern District of Louisiana, for the
sum of one thousand seven hundred and eighty-eight dollars,
presented the same to the curator of his estate for payment.

The curator denied that there were any funds of the estate
liable to said claim.

The facts of the cause show that the curator received a
sum of money by order of the District Court which had been
given to the representatives of Emerson, under the following
act of Congress :

"Whereas, the brig Josefa Secunda was condemned in
the name of the United States, in the District Court of the
United States for the Louisiana district, in the year 1818,
on the seizure and prosecution, and at the sole expense of
Beverley Chew, collector of the District of Mississippi, Wm.
Emerson, deceased, surveyor, and Edwin Lorraine, deceased,
naval officer of the port of New-Orleans, for an infraction of
the slave laws; and, whereas the one half of the proceeds of
the said brig and her cargo are now deposited, subject to the
order of said court, which half would have been payable to
the said Beverley Chew, Wm. Emerson, and Edwin Lorraine,
but for an omission in the law heretofore passed on that
subject :  *Therefore, be it enacted, &c.*, That the District
Court of the United States, for the Louisiana district, be
authorized and directed to order the proceeds of the said
seizure, now deposited, subject to the order of said court,
to be paid over to the said Beverley Chew, and the *legal*
*representatives* of the said Wm. Emerson and Edwin Lorraine,
respectively.   Approved, March 3d, 1831."

It was then agreed between the counsel of the parties in this case, "that if the monies thus received by order of court, under and in pursuance of the said act of Congress, be liable for the debts of said Emerson, contracted or incurred during his life, then the court will decree payment accordingly ; if not, then this court will decree that said plaintiff has no claim to be paid out of the monies received as aforesaid." Upon these issues and facts the judge of probates decreed, that the plaintiff's demand be satisfied and paid out of the monies received in pursuance of the act of Congress, or any other assets in the hands of the curator. The latter appealed.

EASTERN DIST.
*March,* 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

*Hennen,* for the plaintiff, insisted that the monies voted by Congress to the legal representatives of Emerson, and received by the defendants as tutor of the minor children, formed part of his estate and was liable for his debts.

2. The plaintiff has a right to demand that his judgment be paid out of the monies in the hands of the curator, received from government.

*Hoffman,* for the defendant.

The decision of this case must turn upon the truth of the first point made and filed by plaintiff's attorney, to wit : that "the money received by the defendant, as tutor of the minor children of William Emerson, formed part of his estate."

The facts of the case show, that at the death of said Emerson, he was barred by a judgment from any recovery of the proceeds in question. Had suit been brought by those representing his estate, could any recovery have been had ? If not, how then can it be said that such proceeds formed part of his estate ?

2. It is contended that some of the means of the deceased were exhausted in the services rendered, and the advantage which the government derived from their services, was the motive which induced Congress to pass the act in question. But this reasoning would apply to all cases of donation, and leads us from the point for the decision of the court, viz : the legal rights of the creditors of Emerson, upon proceeds which

EASTERN DIST.
*March,* 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

the courts of the country had refused to give him, but which another branch of the government, after his death, ordered to be given to his regal representatives. If we are permitted to go into the motives which influenced the Congress and Executive of the United States, they would be decisive against the plaintiff's claim. The act was, no doubt, prepared by one of our senators or representatives, with a full understanding of the import of the term *legal representatives,* as used in our code. They could have contemplated none other than descendants, because Emerson had been dead more than a year previous to the passage of the act, a period, which, by our law, terminates the functions of the executors, administrators, curators, &c. But all this inquiry must be irrelevant. It is enough to know that Emerson lived and died under a judgment which denied him all right to participate in the proceeds in question. If his children obtained that from the gratitude of his country, which the laws had refused, it would violate both law and justice to deprive them of it. Congress intended it in the nature of a pension, and by our laws such property is not liable to execution.

*Worthington,* for the heirs of Emerson, on the same side. The questions which are presented by the facts stated in this case, are :

1. Whether the fund given by the act of Congress to the "legal representatives" of William Emerson, who was then deceased, falls into the mass of his estate and becomes assets for the payment of his debts, or

2. Whether it is a donation to his *legal representatives,* which would enure to the benefit of his children.

The estate of every decedent constitutes a fund for the payment of his debts.

Creditors may resort to all his estate in possession, and to all rights or claims to property existing at the period of his death.

The right or claim must be a legal one, capable of being enforced, if against a subject or a citizen, and if against a sovereign recognized by the principles of public law.

Such a claim is well understood, and easily capable of being distinguished from a claim to bounty founded upon sentiments of gratitude.

Such a claim may be devised, or it may be assigned for the benefit of creditors. It enters into the estate and becomes assets at the decease of the claimant. 1 *Peters' Reports*, 216.

In this case every *right* of Emerson had been repudiated during his life, by the decision of the Supreme Court of the United States. 10 *Wheaton*, 312.

It was there decided that nothing could be claimed by him, "except from the *bounty* of the government."

"He was deserving of public respect for his good conduct on this occasion; but as the act has made no provision for his compensation, he must be left, in common with those who made the military seizure, to the *liberality* of the government."

The court did not refer him to the *justice*, but to the liberality of the government; they excluded the idea of his *right* by referring him to its bounty.

If then Emerson had no right at the period of his death, which the public law would recognize, from what source do his creditors obtain such right? He had no claim which he could assign or transmit by inheritance or otherwise, and therefore the fund which is here given, though founded as a bounty upon his meritorious services, must follow the terms of the grant according to its proper interpretation. 1 *An-struther's Reports*, 130. 3 *Brown's Reports*, 224. *Civil Code, article* 890.

3. That Congress intended that this fund should go to the children, is strongly presumed, from the fact, that when the memorial was presented the father was dead, and the children were the memorialists. The term "legal representatives" is their proper designation, and in this case was evidently intended to apply to them, and them alone. 3 *Brown's Reports*, 224.

*Bullard, J.,* delivered the opinion of the court.

The question we are called upon to solve in this case, was presented to the court below on a case stated. The parties

EASTERN DIST. agreed that the plaintiff has recovered a judgment against the
*March*, 1837. succession of Emerson ; that the money out of which he
claims to have his judgment satisfied, was paid over to the
HALL defendant, in pursuance of a judgment rendered by the
*vs.* District Court of the United States, for the Eastern District
EMERSON'S CU- of Louisiana ; that judgment was rendered in conformity
RATOR & HEIRS. with a special act of Congress. If the moneys thus received
be liable for the debts of Emerson, contracted during his
life time, then the court will decree payment accordingly; if
not, then the court will decree that the plaintiff has no claim
to be paid out of that fund.  The question, therefore is,
whether the fund, thus received, belongs to the children of
Emerson, independently of his creditors, or whether it forms
assets in the hands of the curator of his estate ; and this
depends upon the proper construction of the act of Congress.

It appears by the preamble of the act, and other evidence
before us, that B. Chew, E. Lorraine, and W. Emerson, at
their joint trouble and expense, had seized and prosecuted
the Josefa Segunda, for an infraction of the laws of the
Union, for the suppression of the slave trade ; that she was
condemned by the District Court of the Louisiana District,
and a portion of the proceeds was decreed to them as captors.
On an appeal to the Supreme Court of the United States,
that judgment was reversed, so far as related to the claim of
those persons, the court being of opinion, that in consequence
of an omission in the acts of Congress, they were not entitled
to any part of the prize. While things were in this situation,
Emerson died, and a memorial was presented to congress by
Chew and Lorraine, and the children of Emerson, and the
act in question was passed, by which the District Court was
" authorized, and directed to order the proceeds of said sei-
zure, now deposited, &c., to be paid over to said B. Chew,
and *the legal representatives* of W. Emerson and E. Lorraine,
respectively."

It is contended by the counsel for the appellant, that
Emerson, in his life time, was not entitled to this fund, and
consequently, that it cannot belong to his succession ; that
it was granted to his children as a pure gratuity, a donation,

a proof of national bounty and gratitude for meritorious services, certainly, but services which, under the existing laws of the country, entitled him to nothing; that the words " *legal representatives*," under the act of Congress, is mere *descriptio personæ*, that Emerson had no right, of which the act of Congress may be considered a restoration or a recognition, and consequently, that the money given does not belong to his estate.

EASTERN DIST.
*March*, 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

It is true, that without the interposition of Congress, Emerson was without remedy, inasmuch as the sovereign cannot be sued; but it is equally true, that the seizure and condemnation of the slave ship, in accordance with the policy of government, at the expense and by the personal exertions of Emerson and his associates, benefited the treasury of the Union; that the government, if it had retained the proceeds of the ship, would have profited by the labor and expenditure of money on the part of those citizens. The want of remedy is not always a safe test of right. It appears to us there was an equitable right, and that the subsequent act of congress is evidence of the liberal justice of the government, rather than a pure donation or gratuity. The expense and labor employed in that prosecution diminished *pro tanto* the means of Emerson to provide for his debts, and formed the foundation for a just claim for indemnity. If similar services had been rendered to an individual even without his express request, the person rendering them, as *negociorum gestor* would be entitled to an action to recover back his expenses thus beneficially incurred.

Let us suppose that Emerson had afterwards become insolvent, and had executed an assignment of all his property, rights and actions; would this right or claim have passed to his syndics? Numerous cases to which we have been referred tend to establish the affirmative of this proposition. The case of Comegys et al *vs.* Vasse, 1 Peters, 193, relied on by the counsel for the appellant, is strongly analogous. Vasse had been an underwriter, and had paid various losses occasioned by unjust seizures and condemnations by Spain. The assured had abandoned to him. He retained nothing

EASTERN DIST.
*March*, 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

but the feeble *spes recuperandi*, depending on the justice of a foreign government, and the chances of negociation between his own government and Spain. He became a bankrupt, and executed an assignment according to the bankrupt law of 1800. His assignees many years afterwards received a share of the indemnity for unjust spoliations, provided for by the treaty of limits of 1819, with Spain. Vasse instituted his action against his assignees to recover back the amount they received, on the ground that his claim did not pass by the assignment. The Supreme Court of the United States decided against him. In delivering the opinion of the court in that case, Mr. Justice Story strongly combats the doctrine established by the master of the rolls in the case of Campbell *vs.* Mullett, 2 *Swanton's* Reports, 551, which arose under the British treaty of 1794, in which he said, that "whatever the individual obtains is not on the ground of right, or private property, but of hardship and injustice. Though this, therefore, is not a case of pure donation, as of a gift without any thing in the nature of a consideration, yet for the purpose of being contrasted with property or right, it is a donation, not a restoration of a former right, but from a new fund belonging to an independent authority, a grant to a sufferer for what he has lost." The Supreme Court, on the contrary, held, that the party might, with reference to mere municipal law, be without remedy, but with reference to principles of international law, he had a *right*, both to the justice of his own and the foreign sovereign ; that the right to compensation, in the eye of the treaty was just as perfect, though the remedy was merely by petition as the right to compensation for an illegal conversion of property in a municipal court of justice. They adopted the principles sanctioned by Lord Hardwicke, in the case of Randall *vs.* Cochran, 1 Vezey, 98, in which it was settled that the right of indemnity accompanied the right of property, and that if the party had died before or after the treaty was made, and compensation had been subsequently decreed, it would have been assets, and distributable as such in the hands of his executors and administrators.

The right of indemnity accompanies the right of property. So, where a person has a claim on government for meritorious services rendered, or losses incurred, and died before or after a treaty was made or law passed, and compensation subsequently decreed or given, it will be assets, and distributable as such in the hands of his executors or administrators.

EASTERN DIST.
*March*, 1837.

HALL
*vs.*
EMERSON'S CU-
RATOR & HEIRS.

The case here referred to, as decided by Lord Hardwicke, is a very strong and very remarkable one. The king of England had issued letters of reprisal against the Spaniards, for the benefit of his subjects, in consideration of losses sustained by unjust captures, and commissioners were appointed to distribute the produce of those reprisals among the sufferers. The commissioners would not permit the underwriters, but only the owners, to make claim for the losses, although the latter had already been satisfied for their losses by the former. The Lord Chancellor decreed on the contrary, that the owners should account for the same to the insurers.

Here the almost hopeless chance of indemnity for losses, sustained by the injustice of a foreign government, was treated as a right, which passed by tacit subrogation to the underwriters, by whom the losses had been paid, and a fund provided by the extraordinary measure of reprisals, was considered not as a bounty to the sufferers, but substantially as an indemnity to the underwriters.

The case of Evans et al *vs.* Charles et al., Anstruther's Reports, 128, has been relied on in this case. The question was, to which of four setts of claimants a certain fund belonged, which had been given by will to such of the creditors of the husband of the testatrix, as had compounded with him in his life time for ten shillings in the pound, of a certain debt, or *to their personal representatives*. The reasoning of the chief baron has not much connexion with his conclusion, according to his own candid and singular confession; that the Court of Exchequer had found itself much puzzled to form any determination, "and we now decide it," says he, "rather because it is necessary to award the property to some one, than that we see clearly a superior right in any."

The only question is stated to have been, who are entitled to take, under the description of *the personal representatives of the creditor;* and it was decided, that the administratrix of the deceased creditors was entitled beneficially to the bequest, and not the next of kin, nor the residuary legatee of the creditor. The difficulty appears to have been in raising

2

EASTERN DIST.
March, 1837.

HALL
vs.
EMERSON'S CU-
RATOR & HEIRS.

an implied trust in relation to property which was not vested in the original creditor after he compounded for ten shillings in the pound, the remaining ten shillings being long afterwards provided for by his widow. The case turned evidently upon a distinction peculiar to the common law between a *legal* and an *equitable* right, and the court decided in favor of the administratrix, because no *cestui que trust* had shown himself entitled to claim through the person who had the legal title, by answering to the description of *personal representative*.

The case of Destrehan *vs.* Destrehan's executors, 4 Martin, N. S., 557, has also been alluded to in argument. In that case, this court held that grand children, coming to the partition of their grand father's estate, in concurrence with uncles and aunts, are not obliged to collate an onerous obligation due by their father. The children had renounced the succession of their father, who died before their grand father. The analogy between that and the present case is extremely faint.

A person who, in his life time, performs services useful to government, and expends his money, is deemed to have an equitable claim or right to be remunerated for these services and expenditures. This is susceptible of being assigned and transferred, and at his death it is transmitted to his succession—to those who are appointed by law to inherit his property, coupled with the obligation of paying his debts. So, where congress passed a law, authorizing a certain fund, arising from the

Emerson was therefore, in our opinion, seized in his life time of an equitable right to be remunerated for services rendered and money expended; a right susceptible of being assigned and transferred, as much as the claims of our citizens against foreign governments for unjust condemnations and seizures; a hope, a reasonable expectation coupled with a pecuniary interest. If such a right could be assigned, it was certainly transmissible at his death to his succession, to those who are appointed by law to inherit his property, coupled with the obligation of paying his debts. If he had bequeathed this claim or right by will, we cannot doubt the legacy would have been valid. Having died intestate, we must consider it as having descended, and forms a part of his succession. According to the code, succession not only includes the rights and obligations of the deceased, at the time of his death, but all that has *accrued* thereto since the opening of the succession. *Article* 869. No right, whether legal or equitable, perfect or imperfect, is lost or annihilated, they all descend according to the legal order of succession.

*" Heriditas nihil aliud est quam successio in universam jus quod defunctus pabuit."* *l.* 24, *ff.*

When Congress authorized this fund to be paid over to the *legal representatives* of Wm. Emerson, we are not warranted in supposing that they intended to give it a different destination from what the law would have given it. The legal representative of the deceased person, we understand to be one standing in the rights of the deceased by authority of law. The defendant having received the money in that capacity, it is in our opinion, liable in his hands for the debts of the deceased.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.

meritorious services of a deceased person, to be paid over to his *legal representatives: Held,* that it passed to his curator as the legal representative, standing in his rights, by authority of law, and liable in his hands for the debts of the deceased.