NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 0641

STATE OF LOUISIANA

VERSUS

KENNY VEAL

Judgment Rendered: __DEC 2 2 2022__

* * * * *

On Appeal from the
20th Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Trial Court No. 20602

Honorable Kathryn E. Jones, Judge Presiding

* * * * *

Jessica B. Weimer
Samuel C. D'Aquilla
Clinton, LA

Attorneys for Appellee,
State of Louisiana


Prentice L. White
Baton Rouge, LA

Attorney for Defendant-Appellant,
Kenny Veal

* * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

The defendant, Kenny Veal, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. A unanimous jury found him guilty as charged. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals, challenging the sufficiency of the evidence. Additionally, he notes the trial court failed to inform him of the prescriptive period for post-conviction relief. See La. Code Crim. P. art. 930.8(C). For the following reasons, we affirm the conviction and sentence and remand with instructions.

## FACTS

On September 1, 2020, the victim, Shaquille Gray, an inmate at the Louisiana State Penitentiary at Angola (Angola), was stabbed to death in a fight with the defendant in a prison dormitory.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, the defendant contends the State presented insufficient evidence to show that he committed second-degree murder of the victim. He argues the video surveillance of the incident failed to fully capture the incident – especially the substance of the argument between himself and the victim. He argues he acted in self-defense because he feared for his life. In the alternative, he argues the offense was manslaughter because he acted in sudden passion after he lost control when the victim struck him in the face.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See **Jackson v.**

2

**Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Oliphant**, 2013-2973 (La. 2/21/14), 133 So.3d 1255, 1258-59 (per curiam); see also La. Code Crim. P. art. 821(B); **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). **State v. Livous**, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1039-40, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130. When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove . . . must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; **Oliphant**, 133 So.3d at 1258; **Livous**, 259 So.3d at 1040.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Gardner**, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So.3d 265, 267. The weight given to evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. **Livous**, 259 So.3d at 1040.

Second degree murder, in pertinent part, is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be formed in an instant. **State v. Mickelson**, 2012-2539 (La. 9/3/14), 149 So.3d 178, 183. Because it is a state of mind, specific intent need not be proven as a fact, but

3

may be inferred from circumstances surrounding the offense and the defendant's actions. **Mickelson**, 149 So.3d at 182-83.

## JUSTIFIABLE HOMICIDE

A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.

When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. The issue is whether or not a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 147.

## MANSLAUGHTER

Manslaughter is, pertinently, a homicide that would be second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" are mitigating factors in the nature of a defense. If the defendant establishes those factors by a preponderance of the evidence, a verdict for murder is inappropriate. **State v. Reed**, 2014-1980 (La. 9/7/16), 200 So.3d 291, 311, cert. denied, ___ U.S. ___, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017); **State v. Eby**, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 424-25, writ denied, 2018-0762 (La. 2/11/19), 263 So.3d 1153. However, provocation will not reduce a homicide to manslaughter if the factfinder finds the

offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. See La. R.S. 14:31(A)(1). In other words, if a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act. **State v. Leger**, 2005-0011 (La. 7/10/06), 936 So.2d 108, 171, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Provocation and time for cooling off are determinations made by the factfinder using the standard of the average or ordinary person with ordinary self-control. **Reed**, 200 So.3d at 311; **Livous**, 259 So.3d at 1040.

Dr. Yen Van Vo was accepted by the court as an expert in the field of forensic pathology. He performed the autopsy of the victim. The victim sustained nineteen stab wounds, several alone that may have been fatal. The victim suffered a three-and-one-quarter inch deep stab wound to the left ear, which damaged the left internal carotid artery, a major blood vessel. He also suffered a five-inch deep wound to the right side of his neck, which lacerated a vein and artery. He sustained numerous stab wounds to the back ranging in depth from one-half inch to five inches. The wound track predominantly showed a downward trajectory, that is the victim was stabbed from the top of the body down towards his feet. The victim had no defensive wounds.

On September 1, 2020, Angola Major Chad Hardy responded to the dormitory where the incident occurred after an emergency beeper was activated by a prison guard. The defendant was "covered in blood." The defendant stated "[h]e shouldn't have fucked with me." Major Hardy reviewed video footage of the incident and saw that the defendant swung first at the victim. The victim then tried to defend himself from the defendant, the defendant ducked, and then the defendant jumped on top of the victim and repeatedly stabbed him. Prior to the incident, Major Hardy had dealt with the victim for being intoxicated on "mojo," but not for any incidents involving violence. Major Hardy testified that the inmates knew that if they had a problem in

5

the dormitory, they could talk to him, and he would move them to another area to stop the violence.

The surveillance footage, which did not include sound, was played for the jury at trial. It showed the defendant wearing red shorts and attacking the victim from behind. The victim was trying to swing at the defendant, but the defendant took him to the ground, got on top of him, and repeatedly struck him, leaving the bloodied victim in a pool of blood. Immediately after the stabbing, the defendant walked to the back of the dormitory, approached other inmates who backed away from him, and then returned to the front of the dormitory.

The State introduced into evidence a ten-and-one-half inch homemade knife (shank). Angola Investigative Services Colonel Randy Metz investigated the incident. He testified that the shank was recovered from a laundry cart on the day of the incident. According to Colonel Metz, the video footage showed the defendant "hand something off" after the stabbing, before returning to the front of the dormitory. The defendant only had small lacerations as a result of the incident.

Inmate Allen Causey testified the victim had a drug problem but was "a good dude." Inmate Shane Clifton testified the incident was the result of "some lotion." Clifton indicated he traded "dip" to the victim for lotion, but the dip "wasn't no good." Clifton claimed he then gave the lotion to the defendant. Clifton stated he gave the victim $4 to settle the issue, but the victim wanted to fight the defendant and him and told them "to catch the back of the dormitory." Clifton indicated the back of the dormitory was "a blind spot," where knives were taped to the beds. According to Clifton, the victim punched the defendant in the face, and then "they started squabbling" or fighting.

Inmate Preston Johnson testified the victim almost knocked the defendant "unconscious on that first lick." He stated he assumed the defendant had two knives in his hands when he saw the defendant walking to the bathroom after the incident

6

because "common sense will tell you that [the defendant] didn't do that with his hand." However, in a statement Johnson gave to the police on the day of the incident, he stated the defendant had "two knives, one in each hand." In that statement, Johnson also stated that the defendant tried to give "the knife" to people, but they refused to take it. Johnson claimed the victim's blow on the defendant was not shown on surveillance footage because of the angle of the cameras.

The State argued "this wasn't just a killing. This was overkill. [The defendant] wanted to make sure that [the victim] was dead." The State noted the victim had "[a] cluster of twelve stab wounds on his back." The State argued the victim had no defensive wounds because he "never had a chance to fight back." The State pointed out the surveillance video showed the defendant throwing the first punch with the victim's back toward him. In finding the defendant guilty, the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was neither reasonable nor necessary. It was undisputed that the defendant stabbed the unarmed victim nineteen times. Stabbing the victim in the ear, neck, and back with a shank indicates a specific intent to kill or to inflict great bodily harm. A rational juror could have reasonably concluded that the killing was not necessary to save the defendant from the danger envisioned by La. R.S. 14:20(A)(1) and/or that the defendant had abandoned the role of defender and taken on the role of an aggressor and, as such, was not entitled to claim self-defense. See State v. Tran, 98-2812 (La. App. 1st Cir. 11/5/99), 743 So.2d 1275, 1291, writ denied, 99-3380 (La. 5/26/00), 762 So.2d 1101. See La. R.S. 14:21.

After a careful review of the entire record, viewing all of the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt that the defendant was guilty of the second degree murder of the victim and that no mitigating factors were established by a preponderance of the evidence. The verdict returned in this matter reflects that

7

the jury credited the evidence indicating that the defendant ambushed the victim and stabbed him to death and rejected the testimony that the victim threw the first blow. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Roberts**, 2011-2248 (La. App. 1st Cir. 6/8/12), 2012 WL 2061519, *4, writ denied, 2012-1655 (La. 11/9/12), 100 So.3d 834. The jury was not irrational to find the defendant killed the victim with a specific intent to kill or to inflict great bodily harm. It took time to inflict nineteen stab wounds on the victim. Once the jury concluded that the defendant exhibited specific intent to kill or seriously harm the victim, the possibility of manslaughter was foreclosed. See **State v Germany**, 2021-1614 (La. App. 1st Cir. 9/26/22), ___ So.3d ___, ___, 2022 WL 4477061, * 3 and **State v. Baumberger**, 2015-1056 (La. App. 3d Cir. 6/1/16), 200 So.3d 817, 832, writ denied, 2016-1251 (La. 5/26/17), 221 So.3d 859, cert. denied, ___ U.S. ___, 138 S.Ct. 392, 199 L.Ed.2d 290 (2017) ("[T]estimony established that it apparently took time to asphyxiate the victim. It is obvious that the jury concluded that this homicide was not committed in the heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control."). In reviewing the evidence, we cannot say the jury's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662; **Livous**, 259 So.3d at 1043-44. Moreover, an appellate court errs by substituting its appreciation of the evidence and credibility of the witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam);

8

**Livous**, 259 So.3d at 1043. To otherwise accept a hypothesis of innocence that was not unreasonably rejected by the factfinder, a court of appeal impinges on a factfinder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See **Mire**, 269 So.3d at 703.

This assignment of error is without merit.

## FAILURE TO INFORM THE DEFENDANT OF THE PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF

The defendant notes the trial court failed to inform him of the prescriptive period for post-conviction relief. See La. Code Crim. P. art. 930.8(C). We agree.

Louisiana Code of Criminal Procedure article 930.8(A), in pertinent part, provides: "[n]o application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922." Section C of article 930.8 states that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for seeking post-conviction relief. The trial court failed to inform the defendant of the prescriptive period for post-conviction relief.

Failure to advise the defendant of the time limitation, however, does not constitute grounds for reversal of the sentence or remand for resentencing. Instead, under such circumstances, this court routinely directs the trial court to provide the defendant with written notice of the correct prescriptive period. **State v. Kott**, 2006-0973 (La. App. 1st Cir. 12/28/06), 2006 WL 3813712, *1, writ denied, 2007-0089 (La. 10/12/07), 965 So.2d 392. Therefore, the trial court is hereby directed to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written

9

proof that the defendant has received such notice into the trial court record of these proceedings.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**