STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0870

STATE OF LOUISIANA

VERSUS

ANDRE D. COLEMAN

Judgment Rendered: **APR 0 8 2022**

********

Appealed from the 21st Judicial District Court
In and for the Tangipahoa
State of Louisiana
Case No. 1802589

The Honorable Jeffery Johnson, Judge Presiding

********

Scott M. Perilloux
District Attorney
Zachary Daniels
Assistant District Attorney
Livingston, LA

Counsel for Plaintiff/Appellee
State of Louisiana

Ravi G. Shah
Covington, LA
David F. Gremillion
New Orleans, LA

Counsel for Defendant/Appellant
Andre D. Coleman

********

**BEFORE: MCDONALD, LANIER, AND WOLFE, JJ.**

**LANIER, J.**

The defendant, Andre D. Coleman, was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:27 & 14:30.1, and pled not guilty. Following a jury trial, by unanimous verdict, he was found guilty as charged. He moved for a new trial, but the motion was denied. He was sentenced to fifty years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals, challenging the sufficiency of the evidence, the excessiveness of the sentence, the introduction of certain evidence, and the sufficiency of the record. For the following reasons, we affirm the conviction and sentence.

## FACTS

On August 11, 2018, Karen Henry, the defendant's ex-wife, called the police "because [the defendant] was outside [her] house with an [AK-47 assault rifle]." Henry explained she had invited the victim, her friend Emmanuel Jordan, over to her house. Approximately two minutes after he arrived, the defendant drove up to Henry's property in Tickfaw, Louisiana in a gray Chevrolet Tahoe. The defendant asked Henry who was in the truck on her property. She told him that it was none of his business. He replied he was going to find out for himself and reached into the back of his vehicle for the AK-47. Henry also saw that the defendant was wearing a bulletproof vest.

Henry warned the victim not to open the door, then told the defendant not to pass her ditch. It was at that time that she went into her house to call the police. When she went back outside, neither the victim nor the defendant was present. She sat down and heard some shots. Approximately three minutes later, she heard about six more shots.

The victim testified that on an occasion prior to August 11, 2018, he had visited Henry at her home and the defendant confronted him, claimed to be a police

2

officer. The defendant pulled a gun on the victim, demanded the victim's own gun, and told the victim he could not "come over here and all of that."

In regard to the incident on August 11, 2018, the victim was talking to Henry in her yard when the defendant pulled up. The defendant got out of his vehicle holding an AK-47 and wearing a bulletproof vest. The victim was shocked that the confrontation had escalated so quickly, and his immediate thought was to "just get away."

The victim got into his truck, intending to drive back to his home in Kentwood, LA. As he drove in the direction of Interstate 55, he noticed the defendant was following him. As the victim drove up the ramp to merge onto the interstate highway, the defendant fired the AK-47. Bullets were flying around the victim, and he felt himself "get hit." The victim sustained two gunshots in the back. The victim's vehicle stopped on the on-ramp to the interstate, forcing the victim to exit and run to the back of the vehicle.

The defendant pulled his vehicle in front of the victim's vehicle, exited, and "[came] back for [the victim]." The victim ran into an adjacent wooded area to hide. He stayed in the woods for approximately ten or fifteen minutes, but then returned to his vehicle to try and drive himself to the hospital in Amite, LA. The victim realized the tires on his vehicle had been shot out, so he was unable to control the vehicle, and had to pull over. He then called 911. While speaking with the 911 operator, the victim was bleeding heavily and thought he was going to die. Subsequently, he underwent surgery for six hours and, in order to save his life, some of his internal organs were removed. At the time of trial, he was still suffering from problems with his stomach and bowel movements due to the incident.

The victim identified the defendant at trial as the man who had shot him twice in the back with an AK-47, as the man who had chased him from Tickfaw, LA to the entrance ramp of I-55, and as the man who had shot into his truck approximately

3

twelve times trying to kill him. The victim had "no doubt" the defendant was the assailant.

The defense asked the victim if he had told the 911 operator that he did not know who had shot him. The victim replied that, at the time he called 911, he did not know the defendant's name, but he had seen the defendant before in Henry's yard.

The defendant's recorded statement concerning the incident was played at trial. In the statement, the defendant admitted he owned an AK-47. He also admitted he owned the Tahoe involved in the incident. There were bullet holes in the Tahoe, and the window had been shot out. Initially, the defendant claimed the vehicle was "shot up" while parked at a church in Covington. He then stated the bullet holes were made by twenty "kids" who followed him and shot at him after he was waiting for a friend in Independence, LA. The police had no reports of either a shooting at a church in Covington or of a shooting at a Tahoe in Independence. Thereafter, the defendant claimed he smoked "weeds" to forget, and he had shot at people in the past, but could not remember the dates. When asked how long it had been since he shot at someone, the defendant replied a week.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number 1, the defendant contends he was erroneously convicted of attempted second degree murder. He argues the State failed to prove beyond a reasonable doubt that he was the person that shot at the victim. He claims his car had bullet holes because he was shot at and rammed by another car approximately one week before his arrest. He also points out that the police never found the AK-47 assault rifle allegedly used in the offense.

The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a

4

reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438; **State v. Currie**, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So.3d 978, 982.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. La. R.S. 15:438; **Currie**, 321 So.3d at 982.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Further, a specific intent to kill is an essential element of the crime of attempted murder. **Currie**, 321 So.3d at 982.

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A). Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended. La. R.S. 14:27(B)(1). Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S.

5

14:10(1); **Currie**, 321 So.3d at 982-83. Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **Currie**, 321 So.3d at 983. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Eason**, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So.3d 61, 70.

Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could have found the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted second degree murder and the defendant's identity as the perpetrator of that offense against the victim. The State presented testimony from the victim that the defendant was the person who fired the AK-47 and shot him twice in the back. The verdict returned in this matter reflects the jury found the testimony of the victim credible and rejected the defendant's attempts to discredit that testimony. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. See **Currie**, 321 So.3d at 983-84.

We also reject the claim that the evidence was insufficient because the defendant offered an explanation for the presence of bullet holes in his vehicle contrary to the victim's testimony indicating the bullet holes resulted from the defendant's firing on the victim. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the

6

credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **Currie**, 321 So.3d at 983.

Lastly, production of the AK-47 used to commit the offense was not essential to support the conviction in this matter because the victim's testimony, which the jury credited, established all elements of the crime.[1] See **State v. Marcantel**, 2000-1629 (La. 4/3/02), 815 So.2d 50, 56 ("[w]here there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty."); **State v. Farrar**, 2013-1635 (La. App. 1st Cir. 3/24/14), 2014 WL 1177366, *3, writ denied, 2014-0868 (La. 11/14/14), 152 So.3d 879 ("[d]espite the state's inability to introduce into evidence the weapon used during the commission of the robbery, the victim's testimony alone was sufficient to establish that the robbery was committed with a dangerous weapon.").

Accordingly, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). To otherwise accept a hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam).

This assignment of error is without merit.

---

[1] An explanation for why the police were unable to recover the AK-47 is presented in our discussion of assignment of error number 3, *infra*.

7

## EXCESSIVE SENTENCE

In assignment of error number 2, the defendant contends the trial court erred when it excessively sentenced him in violation of his constitutional rights. He argues the fifty-year maximum sentence imposed upon him is unconstitutionally excessive, cruel and unusual punishment.

No oral motion to reconsider sentence was made at sentencing on October 20, 2020. On December 1, 2020, the defendant filed a motion to reconsider sentence, but the motion was denied as untimely. See La. Code Crim. P. art. 881.1(A)(1) ("[i]n felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence."). Accordingly, the defendant failed to make or file a timely motion to reconsider sentence.

Under La. Code Crim. P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See **State v. Thames**, 2015-1298 (La. App. 1st Cir. 9/19/16), 2016 WL 5118581, *4, writ denied, 2016-1911 (La. 9/6/17), 224 So.3d 981; **State v. Duncan**, 94-1563 (La. App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc) (per curiam).

This assignment of error is without merit.

## DISCOVERY VIOLATION

In assignment of error number 3, the defendant contends the trial court erred when it allowed the State to introduce jail calls that were not produced during discovery. He argues the jail calls, which the State claimed were made by him, referenced the gun used in the offense and the probative value of that reference was greatly outweighed by its prejudicial effect. He further challenges the admission of the jails calls on grounds of lack of authentication, as well as hearsay, citing the interpretation of the calls by the lead detective. The State claims that the defendant's

8

contemporaneous objection was related to late disclosure and "[t]he instant arguments of authentication, hearsay, and speculation are not properly before this [c]ourt."

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. Code Evid. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. Code Evid. art. 403; **State v. Gaines**, 2020-0251 (La. App. 1st Cir. 12/30/20), 2020 WL 7769738, *2, writ denied, 2021-00356 (La. 5/11/21), 315 So.3d 870.

Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. See **Old Chief v. United States**, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). **Gaines**, 2020 WL 7769738 at *2.

On the second day of trial, the State advised the court and the defense that it was filing a notice of disclosure of additional evidence the State intended to use in trial. The State set forth that following court the previous day, "it became apparent that there [was] a strong possibility that the defendant may take the stand to testify in his [own] defense." Thereafter, the State indicated it contacted Sergeant Oscar Garcia at the Tangipahoa Parish Jail and asked for a copy of recorded jail calls the defendant

had made prior to posting bond. The State claimed it had received a disc with those calls that morning. The State further indicated that in listening to those calls, it discovered a call that it intended to use in its case-in-chief for purposes of impeachment. The State noted it was making the disclosure pursuant to its continuing duty to disclose and had provided the defense with a copy of the calls. See La. Code Crim. P. art. 729.3. The State also indicated it only intended to play the relevant portions of the five-minute call, at issue, which it would gladly reference for defense counsel. The defense stated, "[j]ust note my objection for the record, Judge. I am kind of surprised of this at the 11th hour to be presented with this evidence."

The court pointed out to defense counsel that the defendant's own telephone call "would have been available to your client and you if you had so chosen." See La. Code Crim. P. art. 716(A). Additionally, the court noted "given the relevance to the issue in this case," it would allow the State to admit the jail call.

The State played the jail call during the direct examination of Tangipahoa Parish Sheriff's Office Lieutenant Jacob Schwebel. During the call, the defendant mentioned "guns being found on the bed." Lieutenant Schwebel testified guns were found on the bed of the defendant's residence. Lieutenant Schwebel further indicated the defendant was not worried about the guns the police took because "[h]e claims to have more guns[.]" Lieutenant Schwebel also indicated the defendant stated he was not worried about the shotguns and "the gun [the police] are looking for, it is not there, they won't find it." Lieutenant Schwebel testified his search of the defendant's house did not recover an AK-47 assault rifle.

It is well settled that defense counsel must state the basis for an objection when it is made, pointing out the specific error to the trial court. The grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error. See La. Code Evid. art. 103(A)(1) ("[e]rror may not be predicated upon a ruling which admits ... evidence

unless a substantial right of the party is affected, and ... [w]hen the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, *stating the specific ground of objection* [.]") (emphasis added); La. Code Crim. P. art. 841(A) ("[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling ... is made ... makes known to the court ... his objections to the action of the court, *and the grounds therefor.*") (emphasis added). **State v. Williams**, 2010-1392 (La. App. 1st Cir. 2/11/11), 2011 WL 2178767, *5, writ denied, 2011-1028 (La. 3/9/12), 84 So.3d 542.

The defendant's objection "for the record," that he was "surprised of this at the 11th hour" failed to preserve for review, error, if any, concerning authentication of the jail calls or whether their interpretation by Lieutenant Schwebel was hearsay. The trial court, however, noted it was allowing the admission of the jail call "given the relevance to the issue in this case" and noted the defendant's objection to the ruling. Thus, the defendant's Article 403 claim that the jail calls should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice is properly before this court.

The admission of the jail call was not unduly and unfairly prejudicial. The defendant pled not guilty to the charge of attempted second degree murder. Thus, he denied he was the person who shot the victim. The challenged evidence was highly probative of whether the defendant was in possession of the AK-47 assault rifle used in the offense and his identity as the perpetrator of the crime. Further, the jail call was highly probative of whether the defendant hid or destroyed the weapon, which fact, in turn, was highly probative of his guilty knowledge and intent to commit the specific intent crime. The prejudicial effect to the defendant from the challenged evidence did not rise to the level of undue or unfair prejudice when balanced against the probative value of the evidence.

11

This assignment of error is without merit.

## INCOMPLETE RECORD

In assignment of error number 4, the defendant contends his constitutional rights have been violated by the trial court providing an insufficient record. He argues no transcription was made of opening statements, voir dire, or closing arguments. He argues the title page of the transcript of the motion for reconsideration of sentence lists the incorrect person as his defense counsel. Lastly, he claims "countless words" appear to be "clearly mis-transcribed by the [c]ourt reporter."

The State responds the minutes reflect the jury selection process and do not reflect any contested or for-cause challenges by the defense. The State notes that although voir dire, opening statements, and closing argument were not transcribed, the record includes statements from the court reporter that "[n]o assignments of error were made during voir dire[,]" "[n]o objections or assignments of error made [during opening statements,]" and "[n]o objections or assignments of error made [during closing arguments.]" Thus, error, if any, during those proceedings was not preserved for review. See La. Code Crim. P. art. 841(A) ("[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.").

The State further notes the defendant does not claim he was absent from any of the portions of trial or that the record does not contain all evidence produced at trial. Lastly, noting, "[t]he party making the motion for appeal bears the burden of furnishing the appellate court with a record of the trial proceedings needed for review; and therefore, any inadequacy of the record is imputable to the appellant[,]"[2] the State points out the defendant has made no attempt to supplement

---

[2]**State v. Beckley**, 2018-386 (La. App. 5th Cir. 5/8/19), 273 So.3d 503, 514, writ denied, 2019-01003 (La. 12/10/19), 285 So.3d 490.

the record, and thus, it is unclear whether the proceedings at issue were unrecorded or merely not transcribed.

Louisiana Constitution article I, section 19, guarantees defendants a right of appeal based upon a complete record of all evidence upon which the judgment is based. Additionally, in felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. La. Code Crim. P. art. 843. The Article 843 reference to "objections" and "arguments" generally only applies to objections made in open court and the arguments of counsel in closing, because only those objections and arguments rise to a level of materiality sufficient to invoke Article 843. Similarly, the reference in Louisiana Constitution article I, section 19, to record evidence does not encompass bench conferences that do not satisfy the materiality requirements of Article 843. **State v. Troquille**, 2007-1486 (La. App. 1st Cir. 6/6/08), 2008 WL 2332234, *6, <u>writ denied</u>, 2008-2186 (La. 4/24/09), 7 So.3d 1197.

Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal. <u>See</u> **State v. Robinson**, 387 So.2d 1143, 1144-45 (La. 1980) (reversal was required when the record failed to contain the testimony of a State and a defense expert witness); **State v. Ford**, 338 So.2d 107, 110 (La. 1976) (reversal was required when the record was missing the testimony of four State witnesses and the voir dire of prospective jurors). Conversely, inconsequential omissions or slight inaccuracies do not require reversal. **Troquille**, 2008 WL 2332234 at *7.

Initially, we note the defendant failed to designate the portions of the record to be transcribed for appeal. <u>See</u> La. Code Crim. P. art. 914.1 (A) ("[t]he party making the motion for appeal shall, at the time the motion is made, request the

13

transcript of that portion of the proceedings necessary, in light of the assignment of error to be urged."). Further, the record is sufficient for review of all assignments of error properly before this court in this matter. Thus, the proceedings omitted from the record are immaterial. See La. Code Crim. P. art. 921 ("[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."). See **State v. Johnson**, 51,652 (La. App. 2nd Cir. 9/27/17), 244 So.3d 617, 629, writs denied, 2017-1792 (La. 5/25/18), 242 So.3d 1230 & 2017-1325 (La. 10/29/18), 254 So.3d 699 ("the record was adequate for appellate review. [The defendant] failed to specify any errors which occurred during voir dire, openings statements, closing arguments, or the bench conferences, and the record does not indicate defense counsel made any objections during those proceedings.").

Additionally, we agree with the State that the defendant's failure to attempt to supplement the record leaves open the possibility that omitted proceedings, although not transcribed, may have been recorded. In this regard, we are guided by the concurring opinion of Justice Summer in **State v. Spain**, 329 So.2d 178, 180 (La. 1976), to-wit:

> [La. Code Crim. P. art. 843] provides that the entire proceedings be recorded, but it does not require that the entire proceedings be transcribed for review on appeal in every case.
> When the [Louisiana Constitution, article I, section 19] prescribes that ["]No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based[,"] it does not mean that those portions of the evidence which are not relevant to the contentions made at the trial must be furnished for review. For instance, only those portions of the record relevant to assignments of error need be transcribed and furnished to the appellate court. Pleadings and proceedings, as distinguished from evidence, however, from which error is discoverable by a mere inspection, are properly part of the record furnished to the appellate court in every appeal. La. Code Crim. [P.] art. 920.

14

The labor, time and expense involved in transcribing the evidence are principal deterrents to speedy criminal appeals. Needless transcriptions should be avoided unless specifically required by law.

This assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**