# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**PER CURIAM**:

2014-K -2295          STATE OF LOUISIANA v. QUINT MIRE (Parish of Vermilion)(2nd Degree
                      Murder)

                      Accordingly, the ruling of the court of appeal is reversed and
                      defendant's conviction for second degree murder and sentence of
                      life imprisonment at hard labor without parole eligibility are
                      reinstated.
                      REVERSED.

                      CRICHTON, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2014-K-2295

## STATE OF LOUISIANA

## VERSUS

## QUINT MIRE

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF VERMILLION

**PER CURIAM**:

Defendant Quint Mire shot and killed Julian Gajan on February 9, 2011. They were hunting deer out-of-season in the Little Prairie marsh in Vermillion Parish. Defendant shot the victim three times with a semi-automatic shotgun, striking him in the head, neck, and torso from a distance of approximately 40 to 70 feet. Defendant collected the spent shotgun shells and left without trying to render aid and did not seek help. Defendant then discarded the shotgun shells in a canal.

The victim was reported missing the next day. His body was found on February 12, 2011, after a search by state and parish agencies and members of the community. Defendant stood by while others diligently searched and even took steps to divert attention from himself and cast suspicion on others. On February 13, 2011, defendant finally admitted to detectives that he shot and killed the victim. He claimed it was a hunting accident. He said the victim was driving deer toward him and that he mistook the victim for a deer. Defendant took law enforcement officers to the location where the

shooting occurred. Defendant was charged with second degree murder, La. R.S. 14:30.1, and obstruction of justice, La. R.S. 14:130.1.

Defendant testified at trial. He characterized the shooting as a terrible mistake. He said that he took up a position while the victim drove the deer toward him. When he saw movement, he fired three times thinking that the victim was a deer. When asked why he did not attempt to assist the victim, defendant claimed he had a crippling fear of the dead. He also claimed it never crossed his mind to call for help. He did not know why he did not report the shooting other than that he was frightened and distraught by it.

The state's witnesses described the tumultuous relationship between defendant and victim over the years and their various business disputes. Witnesses testified that the victim owed defendant over $1,000 for crab traps, the victim had stolen from him, they had physically fought on one occasion, they were evidently unable to reach an agreement over a lucrative contract to provide catfish, and defendant had performed work for the victim but felt undercompensated for it. One witness, Gregory Raspberry, testified that defendant on three occasions speculated to him that he could kill the victim and get away with it.[1] Another witness, Captain Buatt, testified that

---

[1] The court of appeal rejected defendant's claim that he should have been granted a new trial based on the state's failure to disclose that Raspberry had worked as a confidential informant in an unrelated narcotics investigation and, as a result, charges against Raspberry had been dismissed. In his opposition to the state's application, defendant argues that the court of appeal erred in this determination. However, although this filing was designated as an opposition, it did not exclusively "[set] forth reasons why the application should not be granted." La.S.Ct. Rule X, § 6. Instead, it effectively constituted a cross-application because it sought substantive review of that portion of the court of appeal's opinion that upheld the district court's denial of defendant's motion for new trial, and is therefore subject to La.S.Ct. Rule X, § 5(a), which provides: "An application seeking to review a judgment of the court of appeal either after an appeal to that court . . . shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal." Defendant filed this cross-application 40 days after the court of appeal rendered its decision and notice of judgment was mailed. Therefore, this claim, which was not timely made, is not considered.

he examined the place where the shooting occurred. From defendant's vantage point, there was a fairly open line of sight. He opined that fully grown deer in that area were about 34 to 36 inches tall at the top of the shoulders. The victim, who was shot in the head, was 67 inches tall.

The jury found defendant guilty as charged of second degree murder and obstruction of justice. Defendant was sentenced to concurrent terms of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for murder, and 10 years imprisonment at hard labor for obstruction. The court of appeal, however, vacated defendant's conviction for second degree murder, entered a judgment of guilty of negligent homicide, and remanded for sentencing because it found the evidence insufficient to establish defendant's specific intent. State v. Mire, 14-0435, p. 18 (La. App. 3 Cir. 10/8/14), 149 So.3d 981, 991 ("We find that the State did not exclude every reasonable doubt that Defendant had the specific intent to kill the victim. Accordingly, the evidence was insufficient to support Defendant's conviction for second degree murder."). For the reasons that follow, we grant the state's application to reverse the court of appeal and reinstate defendant's conviction for second degree murder and sentence of life imprisonment at hard labor without parole eligibility.

The lynchpin of the court of appeal's analysis was its determination that the state failed to establish a clear motive for the killing. See generally State v. Mart, 352 So.2d 678, 681 (La. 1977) (finding "that a lack of motive may properly be considered as a circumstance mitigating against specific intent"). The court of appeal erred here in two aspects. First, the state, in fact, presented abundant evidence of motive in the form of witnesses who described the various disagreements and, at times, acrimonious relationship

3

between defendant and victim over the years. As the dissent correctly noted, Mire, 14-0435, pp. 1–2, 149 So.3d at 996–97 (Amy, J., dissenting), the jury was entitled to credit the state's witnesses in this regard and reject the defendant's disavowal of these potential motives within the confines of due process, which allows the trier of fact to make credibility determinations, within the bounds of rationality, and accept or reject the testimony of any witness; and thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La. 1988). The court of appeal acknowledged and summarized the abundant evidence pertaining to potential motivations but then dismissed it all as providing poor and inadequate justification to commit murder. For example, the court of appeal opined:

> Witness testimony did not establish a motive for Defendant to kill the victim. If Defendant shot the victim over unpaid money, he would not have left $527.00 in the victim's wallet. If Defendant wanted the fishing contract to himself, he would require significant help to provide ten thousand pounds of fish per week. The motives suggested by the witnesses simply do not make sense.

Mire, 14-0435, p. 17, 149 So.3d at 991. However, the fact a defendant's motivations to commit murder are not objectively reasonable does not render the jury's determination he harbored these motivations and acted on them irrational.[2] The court of appeal erred in substituting its appreciation of the evidence regarding defendant's motive for that of the jury, and thus failed to

---

[2] See, e.g., State v. Severin, 04-0326 (La. App. 5 Cir. 9/28/04), 885 So.2d 609, writ denied, 04-2805 (La. 3/11/05), 896 So.2d 64. The Fifth Circuit in Severin rejected the defendant's claim that the evidence was insufficient because "the State failed to show [he] had a motive for shooting the victims, and thus, failed to prove specific intent." Id., 04-0326, p. 9, 885 So.2d 609, 614. The Fifth Circuit found that defendant's statement that "someone in a bar had spilled a drink on him" and "pissed him off" suggested a motive for defendant to shoot into a crowd outside the bar. Id., 04-0326, p. 15, 885 So.2d at 618.

correctly apply the due process standard of <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Second, the court of appeal erred in its apprehension of <u>State v. Mart</u>, <u>supra</u>. Defendant in <u>Mart</u> consumed a large quantity of beer and then fired his shotgun at the home of his brother-in-law, with whom he was angry. Afterward, possibly motivated by racial animus, he fired his shotgun at two strangers. He claimed he aimed over their heads and shot only to frighten them. However, one of the two died as a result and Mart was found guilty of second degree murder.

This Court reversed the conviction because it found the trial court erred in rejecting special jury charges requested by the defense regarding intoxication:

> In the present record, the evidence of the extensive pre-crime drinking, coupled with the bizarre behavior before and at the time of the crime, constituted appreciable evidence from which the jury might draw the inference that the accused was intoxicated. It was for the jury, not the judge, to determine what effect, if any, this intoxication had upon the presence or absence of the specific intent to kill or inflict great bodily harm required for guilt of second degree murder (and not required for the responsive lesser verdict of manslaughter).
>
> The effect of the denial of the special written charges was to deprive the accused of jury instructions and consideration of his principal defense that he lacked the requisite specific intent required for a conviction of second degree murder, as charged. Therefore, we must reverse the conviction and remand for a new trial.

<u>Mart</u>, 352 So.2d at 681. In addition, this Court (while recognizing that it was unnecessary to make this determination after finding reversible error) found the trial court erred in failing to qualify its general motive instruction:

> Assignment 16 (objection to general charge on motive: "The law considers that no man does any act without a motive for doing it . . . it is not necessary to establish a motive to warrant a conviction"). Once a charge concerning motive was

given, the charge was incomplete, since affirmative evidence disclosed lack of motive: Under such circumstances, as defendant requested, the jury should be instructed that a lack of motive may properly be considered as a circumstance mitigating against specific intent.

Id.

Mart, notably, did not involve a question of the sufficiency of the evidence. Under the standard of Jackson v. Virginia, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt." Id., 443 U.S. at 319, 99 S.Ct. at 2789 (second emphasis added). In the present case (in which the state did not advance a felony-murder theory), the state was required to prove that defendant killed a human being with the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Dicta in Mart notwithstanding, motive is not an essential element of the offense and a jury need not find it proved beyond a reasonable doubt. Although fairness may require that—once a jury receives a general instruction that the state need not prove motive, and affirmative evidence discloses a lack of motive—then, at defendant's request, the jury must be instructed that lack of motive may properly be considered as mitigating against a finding of specific intent, that principle was overextended by the court of appeal here, particularly considering that the jury in the present case was not instructed regarding motive.[3]

---

[3] Similarly, in State v. Trahan, 11-0148 (La. App. 3 Cir. 7/6/11), 69 So.3d 1240, the same circuit court found evidence insufficient to prove the defendant's specific intent to kill or inflict great bodily harm because no evidence established a motive for the close-range shooting by defendant of her boyfriend:

Here, though the victim was shot at close range, the "other circumstances" needed to support a finding of specific intent are noticeably lacking. Indeed, no evidence indicates that Defendant possessed a motive for the shooting. Motive is not an essential element of murder, but "a lack of motive may properly be considered as a

6

Although a jury may not speculate "if the evidence is such that reasonable jurors must have reasonable doubt," State v. Lubrano, 563 So.2d 847, 850 (La. 1990) (internal quotation marks and citations omitted), the state here presented sufficient evidence, which when viewed in the light most favorable to the prosecution under the due process standard of Jackson v. Virginia, sufficed to establish defendant shot the victim with the specific intent to kill or inflict great bodily harm. Defendant, an experienced hunter, admitted he pulled the trigger three times. Each shot hit the victim, including shots to the head and neck, which one witness testified was about 30 inches higher than he should have aimed to shoot a deer. Defendant not only did not

> circumstance mitigating against specific intent." State v. Mart, 352 So.2d 678, 681 (La.1977). The State attempted to show motive by repeatedly stating that Defendant and the victim argued the day of the shooting and that Defendant was mad at the victim. The prosecutor's statements to the jury were merely words. Not one piece of evidence was introduced to prove an argument or that Defendant was angry at the victim.
>
> The State presented no evidence to the jury that could have allowed them to find that Defendant exhibited the requisite specific intent to kill the victim. Though the State presented evidence showing that the victim was shot in the back at close range, it presented no evidence demonstrating that Defendant aimed the gun at the victim, how the gun discharged, or, as previously discussed, that any acrimony existed between Defendant and the victim. Thus, we can only conclude that the jury arrived at its verdict because of statements made by the prosecutor and defense counsel in their opening statements and in the prosecutor's closing arguments.

Trahan, 11-0148, pp. 6–7, 69 So.3d at 1244 (footnote omitted). This Court reversed the court of appeal and found the evidence was sufficient:

> A rational trier of fact could find from this evidence that defendant discharged the high-powered hand gun by pulling the trigger while holding the gun no more than three or four feet from the victim as he stood defenseless and bent over the washbasin in the bathroom with his back turned towards her, and from that evidence, that defendant had the specific intent to kill or to inflict great bodily harm, although she may then have become emotionally overwrought by what had just happened. Other scenarios involving an accidental discharge of the revolver, but not involving the failed hypothesis of innocence proposed by defense counsel and rejected by jurors, were possible but not so probable that a rational juror would necessarily have a reasonable doubt as to defendant's guilt.

State v. Trahan, 11-1609, pp. 10–11 (La. 7/2/12), 97 So.3d 994, 999–1000.

7

seek help but also took measures to conceal the shooting and misdirect those searching for the victim. Witnesses testified as to the contentious relationship between defendant and victim over the years and their financial conflicts. One witness testified that defendant had previously spoken of killing the victim. Defendant testified to try to explain his behavior after the shooting and deny he had any reason to kill the victim, and the jury was able to evaluate his credibility in that regard.

From this evidence, the dissenting judge in the court below correctly found the evidence sufficient to prove defendant's specific intent. Mire, 14-0435, pp. 1–2, 149 So.3d at 996–97 (Amy, J., dissenting). In finding otherwise, the court of appeal misapplied the due process standard of Jackson v. Virginia, which "does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt." State v. Major, 03-3522, pp. 6–7 (La. 12/1/04), 888 So.3d 798, 802. Although the court of appeal found the evidence of specific intent equivocal, the jury's acceptance of this evidence was not shown to be irrational. Thus, the court of appeal erred in reversing defendant's conviction because of the state's failure to prove a clear and reasonable motive. In accepting a hypothesis of innocence that was not unreasonably rejected by the jury, the court of appeal impinged on the jury's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law.[4]

---

[4] As the Supreme Court explained in Jackson v. Virginia:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to

Accordingly, the ruling of the court of appeal is reversed and defendant's conviction for second degree murder and sentence of life imprisonment at hard labor without parole eligibility are reinstated.

**REVERSED**

---

draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Id., 443 U.S. at 319, 99 S.Ct. at 2789 (citation and footnote omitted).

SUPREME COURT OF LOUISIANA

NO. 2014-K-2295

STATE OF LOUISIANA

VERSUS

QUINT MIRE

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD
CIRCUIT, PARISH OF VERMILLION

**CRICHTON, J., additionally concurs and assigns reasons:**

I wholeheartedly agree with the result in the per curiam in this matter.

However, I write separately to emphasize two fundamental principles of Louisiana

criminal law. First, circumstantial evidence is competent, reliable and regularly

utilized in criminal trials. *See* La. R.S. 15:438 ("The rule as to circumstantial

evidence is: assuming every fact to be proved that the evidence tends to prove, in

order to convict, it must exclude every reasonable hypothesis of innocence"). As

the dissent astutely observes, there was an abundance of circumstantial evidence in

this case, which, in the jury's eyes, excluded every reasonable hypothesis of

innocence.[1] "The test of the sufficiency of circumstantial evidence is not whether

it produces the same conviction as the positive testimony of an eyewitness, but

---

[1] In his succinct and well-reasoned dissent, Judge Amy wrote:

> Notably, jurors heard Gregory Raspberry testify that, on several occasions, the defendant spoke of killing the victim. Any assessment as to his credibility was certainly within the province of the jury, as the trier of fact. See *State v. Oliphant*, 13-2973 (La. 2/21/14), 133 So.3d 1255. The jury also heard witness statements indicating that the defendant and the victim had experienced conflict, that the victim allegedly owed the defendant money, that the defendant admitted to repeatedly discharging his weapon (resulting in multiple projectile injuries to the victim), that the defendant left the victim in the marsh at the scene, and that the defendant misled and misdirected those searching for the victim in the days after the incident. Giving the jury's fact-finding role and its apparent rejection of the defendant's version of events, I find these factors sufficiently support the jury's determination of specific intent to kill the victim or to inflict great bodily harm.

> *State v. Mire*, 2014-435 (La.App. 3 Cir. 10/8/14), 149 So. 3d 981, 996-7.

whether it produces moral conviction such as would exclude every reasonable doubt." *State v. Shapiro*, 431 So.2d 372, 385, (La. 1982), citing *State v. Jenkins*, 134 La. 185, 63 So. 869 (1914).

Second, and as important, I am compelled to note the well-settled principle that the prosecution is not required to prove motive. "'Motive' is not an element of second degree murder . . . . .[t]he state is not obligated to prove that the accused had a cause or reason to commit the crime of second degree murder; it is required to prove that the accused had the 'specific intent' to commit the crime." *State v. Johnson*, 324 So.2d 349, 353 (La. 1975). As a result, the court of appeal committed error in reversing the defendant's second degree murder conviction because of its misplaced view that the State failed to prove motive, which is not an element of the charged offense.[2]

---

[2]Incredibly, a majority of the Court of Appeal wrote:

> No one witnessed this shooting, only Defendant knows absolutely what happened. No physical evidence establishes or negates Defendant's intent. Without question, Defendant intentionally fired the shotgun. The issue, however, is whether he intended to kill or cause great bodily harm to the victim.

> *State v. Mire*, 2014-435 (La.App. 3 Cir. 10/8/14), 149 So. 3d 981, 990-1.

The Court of Appeal further noted: "[t]he State presented no direct evidence to establish defendant's specific intent to kill. **No witness established a motive for murder**." *Id.* at 991. (emphasis added)