**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2020 KA 0470**

**STATE OF LOUISIANA**

**VERSUS**

**CHARLES MICHAEL MORGAN**

**Judgment Rendered:**     **FEB 1 9 2021**

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 585714

Honorable Richard A. Swartz, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana


Cynthia Meyer
New Orleans, Louisiana

Counsel for Defendant/Appellant
Charles Michael Morgan

\* \* \* \* \* \*

**BEFORE:  GUIDRY, McCLENDON AND LANIER, JJ.**

**McCLENDON, J.**

Defendant, Charles Michael Morgan, was charged by grand jury indictment with aggravated rape. Following a jury trial, the jury became deadlocked, and a mistrial was declared. The State amended the indictment to sexual battery of a victim under the age of 13, a violation LSA-R.S. 14:43.1. Defendant entered a plea of not guilty and, following a jury trial, was found guilty as charged. Defendant filed a motion for post-verdict judgment of acquittal, which was denied. The State filed an habitual offender bill of information.[1] Defendant admitted to the allegations in the bill, and the trial court adjudicated him a third-felony habitual offender. The trial court sentenced defendant to forty-nine and one-half years imprisonment at hard labor without benefit of probation or suspension of sentence. Defendant now appeals, designating one assignment of error. We affirm the conviction and habitual offender adjudication. We vacate the sentence and remand for resentencing.

## FACTS

Around 2013, six-year-old G.C.[2] and his mother moved into a house in Slidell with defendant. Defendant and G.C.'s mother were good friends, and she needed a place for her and her son to live. The house was owned by defendant's friend, James Sharp, who drove trucks and was rarely at home. Upon defendant's request, Sharp agreed that G.C. and his mother could live at his house.

When G.C.'s mother was at work, defendant would sometimes watch G.C. G.C. testified at trial that defendant began molesting him. According to G.C., the first incident occurred in G.C.'s bedroom. Defendant pulled down G.C.'s pants and put his mouth on his private area. At trial, G.C. described several more incidents where defendant performed oral sex on G.C. G.C. eventually told his mother, and she and G.C. moved out of Sharp's house. The police were called. Shortly thereafter, G.C. gave an interview at the Children's Advocacy Center (CAC). In the CAC interview, G.C. described incidents where defendant performed oral sex on him and he performed oral sex on defendant.

---

[1] Defendant has two prior convictions for possession of a Schedule II controlled dangerous substance.

[2] The victim is referred to by his initials. See LSA-R.S. 46:1844W.

James Sharp testified at trial that he has known defendant since high school. Sharp allowed defendant to come live with him after defendant was released from jail for a cocaine possession conviction. At some point, defendant asked Sharp if G.C. and his mother could stay at Sharp's house, and Sharp obliged. After having lived at his house for about fifteen months, Sharp wanted G.C.'s mother to move out. Sharp indicated at trial that she drank alcohol too much. He further testified he finally decided she should no longer live at his house when he went home briefly while passing through on a trucking route. According to Sharp, he saw G.C.'s mother and her boyfriend naked on his couch, and G.C. was sitting nearby watching television. G.C.'s mother was passed out. Sharp did not confront G.C.'s mother, but told defendant he had to tell her to move out of his home. Defendant subsequently informed G.C.'s mother that she and G.C. had to move out of the house. Shortly thereafter, G.C.'s mother called Sharp and asked if he (Sharp) had told defendant to tell her to move out. Sharp told her "yes." G.C. and his mother moved out.

Defendant testified at trial. Defendant denied all accusations of sexual abuse.

## ASSIGNMENT OF ERROR[3]

In his sole assignment of error, defendant argues the evidence was insufficient to support the conviction. Specifically, defendant contends that the testimony of the victim was not credible.

A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const. amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See LSA-C.Cr.P. art. 821B; **State v. Ordodi**, 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.

---

[3] Defendant's appellant brief contained three assignments of error. Defendant, however, subsequently filed a supplemental brief, informing this court that he had abandoned the second and third assignments of error and that the only assignment of error to be considered is the instant one regarding sufficiency of the evidence.

When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

Defendant argues in brief that G.C. was coached by his mother regarding the sexual battery allegations and, as such, his testimony was not credible. Defendant suggests that there were significant differences between what G.C. discussed in his CAC interview and what he testified to at trial. Defendant notes that in the CAC interview, G.C. used the words "incident" and "molested," which seemed beyond the vocabulary of a seven-year-old. G.C. noted in the interview that when living with defendant, he and his mother slept on couches. G.C. also said defendant put on a porn movie where men and women were at a club. G.C. discussed various instances of sexual abuse in the CAC interview, such as when defendant put his penis ("wiener") in G.C.'s mouth; when defendant touched G.C.'s penis while in a truck; when G.C. was in his bedroom and defendant pushed him down and put his mouth on G.C.'s penis.

Defendant then in brief suggests that the CAC interview be contrasted with G.C.'s trial testimony. G.C., twelve years old at trial, testified that he was molested when he was six or seven and experienced something children should not have to experience. G.C. testified at trial he and his mother had their own rooms, but usually he and his mother stayed on the couch. G.C. testified the first incident was when he and defendant were in G.C.'s room and defendant turned on a show with vampires engaging in sexual activities. Defendant then put his mouth on G.C.'s penis for "[m]aybe like four minutes." G.C. testified about other incidents of sexual abuse not discussed in the CAC interview.

Despite defendant's assertion, we see no "significant" differences between the CAC interview and the trial testimony. G.C. could only answer the questions asked of him at the CAC interview and the questions asked of him at trial. Given the different questions, G.C.'s responses would necessarily be different. Moreover, the prosecutor covered some areas that the CAC interviewer did not and vice-versa. While there may have been discrepancies, they appear minor and had little to no impact on G.C.'s overall

4

narrative that defendant performed oral sex on G.C. and had G.C. perform oral sex on defendant for over a year.

Defendant himself admits in brief that even taking into account the "material differences" between the CAC interview and trial testimony, "if viewed in a vacuum, this evidence could be considered sufficient to support the verdict." According to defendant, however, given the testimony of defendant, G.C.'s mother, and Sharp, "G.C.'s testimony is not due the deference typically afforded." Defendant suggests that before moving in with him into Sharp's house, G.C. and his mother lived in an unstable environment and that G.C.'s mother was dysfunctional and drank excessively while living with defendant. After they moved out of the house, G.C. and his mother stayed with a friend briefly, then had nowhere else to stay. They were finally able to move in with G.C.'s mother's father. G.C. spent some time in Mississippi with his biological father.

Defendant notes that G.C.'s mother had been "kicked out" of the homes of both her parents on several occasions. Thus, according to defendant, after G.C.'s mother was forced to move out of Sharp's house, she needed to do something to gain the sympathy of her parents so she would have a place to stay. Defendant also points out that G.C. was allowed to watch "True Blood," which although not pornography, was widely known for its explicit sexual content. Further, when living with defendant, G.C.'s mother entertained numerous male visitors late at night. Based on the foregoing, defendant concludes that a rational juror could not have credited "this poorly constructed calculated effort to coach a child into making false claims of abuse."

Whatever theory the defense put forth to explain G.C.'s lack of credibility, the jury rejected it. G.C. testified defendant sexually abused him on various occasions, and the jury chose to believe G.C. The testimony of the victim alone is sufficient to prove the elements of the offense. **State v. McKinney**, 15-1503 (La.App. 1 Cir. 4/25/16), 194 So.3d 699, 705, writ denied, 16-0992 (La. 5/12/17), 220 So.3d 747; **State v. Orgeron**, 512 So.2d 467, 469 (La.App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988).

5

While it is unnecessary to delve into the reasons why a jury may reject a defense theory, we feel compelled to address the following. Both G.C.'s mother and defendant testified that they had been very good friends for many years. When G.C.'s mother was told she had to move out of Sharp's house, it was at the behest of Sharp, not defendant. While defendant personally told G.C.'s mother she had to leave Sharp's house, defendant made it clear to her that Sharp wanted her out. Accordingly, it is not at all apparent why G.C.'s mother would have had any grudge or vendetta against defendant. If she needed a place to stay, and felt forced to concoct a story about sexual abuse of her son to garner sympathy, it seems she would have made Sharp the target of this scheme, rather than defendant.

In any event, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. **McKinney**, 194 So.3d at 704; **State v. Richardson**, 459 So.2d 31, 38 (La.App. 1 Cir. 1984). Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the factfinder, is sufficient to support a factual conclusion. **State v. Marshall**, 04-3139 (La. 11/29/06), 943 So.2d 362, 369, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. **State v. Hughes**, 05-0992 (La. 11/29/06), 943 So.2d 1047, 1051. See **State v. Coleman**, 17-1045 (La.App. 1 Cir. 4/13/18), 249 So.3d 872, 878, writ denied, 18-0830 (La. 2/18/19), 263 So.3d 1155.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See **Ordodi**, 946 So.2d at 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v. Calloway**, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a factfinder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the factfinder. See

6

**State v. Mire**, 14-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of the sexual battery of G.C. See **Coleman**, 249 So.3d at 881-82.

The assignment of error is without merit.

## SENTENCING ERROR

Pursuant to LSA-C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. See **State v. Price**, 05-2514 (La.App. 1 Cir. 12/28/06), 952 So.2d 112, 123 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So.2d 1277. After a careful review of the record, we have found a sentencing error.

For sexual battery of a juvenile under the age of 13, LSA-R.S. 14:43.1C(2) provides a sentencing range of twenty-five to ninety-nine years imprisonment with at least twenty-five years to be served without benefit of probation, parole, or suspension of sentence. Upon being adjudicated a third-felony habitual offender, defendant was sentenced to forty-nine and one-half years imprisonment at hard labor without benefit of probation or suspension of sentence.[4] See LSA-R.S. 15:529.1A(3)(a).

The conditions imposed on a habitual offender sentence are those mandated in the reference statute. **State v. St. Cyre**, 19-0034 (La.App. 1 Cir. 12/19/19), 292 So.3d 88, 115, writ denied, 20-00142 (La. 5/26/20), 296 So.3d 1063. See **State v. Bruins**, 407 So.2d 685, 687 (La. 1981). Defendant's sentence is, therefore, illegally lenient because it fails to restrict the possibility of parole. Further, the reference statute provides that "[a]t least" twenty-five years are to be served without benefits. Thus, because the instant enhanced sentence involves discretion, it cannot be corrected by this court. See **State v. Leboeuf**, 18-1777 (La.App. 1 Cir. 8/2/19), 281 So.3d 714,

---

[4] The minutes indicate that defendant was sentenced to hard labor without benefit of parole, probation, or suspension of sentence. Where there is a conflict between the transcript and commitment, the transcript prevails. See **State v. Collins**, 07-0310 (La. 10/12/07), 966 So.2d 534, 535 (per curiam); **State v. Lynch**, 441 So.2d 732, 734 (La. 1983).

7

716. Accordingly, we vacate the defendant's sentence and remand this matter to the trial court for resentencing.

## **CONCLUSION**

Considering the above, we affirm defendant's conviction and habitual offender adjudication. We vacate defendant's sentence and remand for resentencing.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; REMANDED FOR RESENTENCING.**