# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2021 KA 1337

## STATE OF LOUISIANA

## VERSUS

## CHRISTY LEANNA STEINER

Judgment Rendered: **JUN 0 3 2022**

\* \* \* \* \* \* \*

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 0327-F-2020

Honorable Scott Gardner, Judge Presiding

\* \* \* \* \* \* \*

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Attorneys for Appellee,
State of Louisiana

Gwendolyn K. Brown
Baton Rouge, Louisiana

Attorney for Defendant/Appellant,
Christy Leanna Steiner

\* \* \* \* \* \* \*

BEFORE:  WHIPPLE, CJ., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

The defendant, Christy Leanna Steiner, was charged by bill of information with possession of a firearm by a person convicted of certain felonies (count 1), a violation of La. R.S. 14:95.1; illegal carrying of weapons while in possession of a controlled dangerous substance (CDS) (count 3), a violation of La. R.S. 14:95(E); possession of a schedule III CDS (buprenorphine) (count 4), a violation of La. R.S. 40:968(C); and possession of less than 2 grams of a schedule II CDS (methamphetamine) (count 7), a violation of La. R.S. 40:967(C)(1).[1] She pled not guilty on all counts. Following a jury trial, she was found not guilty on counts 1 and 3 and guilty as charged on counts 4 and 7. She moved for a new trial and for a post-verdict judgment of acquittal, but the motions were denied. On count 4, she was sentenced to five years at hard labor. On count 7, she was sentenced to two years at hard labor. The trial court ordered the sentences to run concurrently, suspended both sentences, and placed the defendant on supervised probation for three years subject to payment of a $1000.00 fine. The defendant now appeals. For the following reasons, we affirm the convictions and sentences.

## FACTS

On November 24, 2019, St. Tammany Parish Sheriff's Office Deputy Boris Medvedev investigated a report of people sleeping in a vehicle in front of a Shell gas station. Deputy Medvedev observed a pickup truck with the defendant asleep in the driver's seat and a male subject asleep in the passenger's seat. Deputy Medvedev also saw a glass smoking pipe in the vehicle.

A subsequent search of the vehicle revealed the presence of methamphetamine, buprenorphine, a loaded firearm, syringes, additional smoking pipes, Ziploc bags, and rolling papers.

---

[1]Steven Michael Rodriguez was charged with multiple counts by the same bill of information. His case was severed for purposes of trial.

The defendant testified at trial. She identified Steven Michael Rodriguez as the passenger in the truck, and testified they stopped at the gas station to sleep because they were exhausted from moving. She denied any knowledge, prior to her arrest, of the presence of the gun in the truck. Additionally, she claimed she only learned of the methamphetamine and buprenorphine in the car after viewing the police report provided during discovery.

## DISCUSSION

In assignment of error number 1, the defendant contends the evidence was insufficient to support the convictions. In assignment of error number 2, she contends the trial court erred in denying the motion for a new trial. In assignment of error number 3, she contends the trial court erred in denying the motion for a post-verdict judgment of acquittal. She argues these assignments of error together, claiming the evidence offered at trial failed to prove the essential element of "intent/guilty/knowledge" and therefore was inadequate to support a finding that she was in constructive possession of the drugs at issue.

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B). The *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, *i.e.*, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. The reviewing court is required to evaluate the circumstantial evidence in the light most favorable to the prosecution and

3

determine if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Smith*, 2003-0917 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 798-99.

As applicable here, it is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedules II or III. La. R.S. 40:967(C) & La. R.S. 40:968(C). Methamphetamine is a controlled dangerous substance classified in Schedule II. See La. R.S. 40:964, Schedule II (C)(2). Buprenorphine is a controlled dangerous substance classified in Schedule III. See La. R.S. 40:964, Schedule III (D)(2)(a).

On the issue of whether the evidence sufficiently proved possession, the State is not required to show actual possession of the narcotics by a defendant in order to convict. Constructive possession is sufficient. *Smith*, 868 So.2d at 799. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of constructive possession. *Id.*

A determination of whether or not there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs

4

were found, evidence of recent drug use, and his physical proximity to the drugs. *Smith*, 868 So.2d at 799.

The defendant argues the instant case is analogous to the factual situation present in *State v. Bell*, 566 So.2d 959 (La. 1990) (per curiam). Additionally, she cites *State v. Jackson*, 557 So.2d 1034 (La. App. 4th Cir. 1990) in support of her argument that "there was no evidence that the pipe had been recently used or that it was ever used illicitly."

*Bell* involved review of the attempted possession of cocaine convictions of Alcides Bell and Andre Davis. *Bell*, 566 So.2d at 959. Bell was a passenger in Davis' car, which was parked two doors away from Davis' residence. *Id.* Bell and Davis were arrested after police officers approached the vehicle to tell the men to turn down the radio and saw a distinctively wrapped package containing a white powder among cassette tapes on a plastic console over the transmission hump of the car. *Id.* The court in *Bell* found insufficient evidence that Bell had dominion and control over the cocaine in Davis' vehicle. *Id.* at 960. The court noted the State presented no evidence that Bell exercised any control over Davis' car, that Bell had any other drugs in his possession on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. The court also noted it was Davis who lived in the neighborhood two doors away and who responded to the request of the police to turn down the radio. *Id.*

*Jackson* involved review of a conviction for attempted possession of cocaine. *Jackson*, 557 So.2d at 1034. During a pursuit of a man named Lee Steele from an area known for drug trafficking, and after Steele abandoned a matchbox containing drugs, a police officer followed Steele into his apartment. *Id.* The defendant was in the apartment standing next to a "little podium type home-made bar." *Id.* Also found in the apartment were a glass pipe with cocaine residue, another pipe, a mirror with traces of cocaine, a razor blade with traces of cocaine, test tubes, glasses, and a bag

5

containing a white substance which appeared to be a material used to cut cocaine. *Id.* at 1034-35. The court in *Jackson* found insufficient evidence to establish that the defendant exercised any dominion or control over the objects which had residue and traces of cocaine. The court noted, "[t]here was no evidence that the residue-containing pipe was warm, that the defendant's fingerprints were on any item, that the defendant tested positive for cocaine, or that the defendant was anything more than a guest in the apartment." *Id.* at 1035.

In contrast to *Bell*, there was evidence in the instant case that the defendant was more than a mere passenger in the driver's vehicle which contained a sealed package of drugs. While, as in *Jackson*, there was no evidence in this case of recent use of the glass pipe, that fact was relevant in *Jackson* because the only evidence of Jackson's dominion and control over the cocaine was that she "was standing next to paraphernalia which had traces and residue of cocaine." *Jackson*, 557 So.2d at 1035. In the instant case, however, the defendant was in the driver's seat of her father's truck when the police discovered her, Rodriguez, and the drugs. She testified she had been using the truck for approximately one month and had been using it during the previous thirty-six hours to help Rodriguez move. There was also evidence of the defendant's dominion and control over the drug paraphernalia to constitute possession in this case. Deputy Medvedev testified he saw a glass smoking pipe "in the vicinity of both of the subjects." Based on Deputy Medvedev's eight years of law enforcement experience, including 400–500 narcotics arrests, he testified that "a glass pipe of that sort is generally used to smoke crack cocaine or methamphetamine."

In *State v. Toups*, 2001-1875 (La. 10/15/02), 833 So.2d 910, the Louisiana Supreme Court reversed the appellate court ruling that there was insufficient evidence to support a finding that the defendant, Mary Toups, exercised dominion and control over the cocaine at issue. Following receipt of information that "Stan"

was selling drugs from his residence in New Orleans, the police conducted a controlled buy from the address and obtained a search warrant for the premises. Prior to executing the search warrant, the police conducted surveillance on the home for approximately thirty minutes. *Id.* at 911. Upon entering the residence, the police saw Toups and Stanley Williams, the known resident of the address, seated on the sofa in the front living room, facing each other and apparently engaged in conversation. *Id.* at 911-12. Two pieces of crack cocaine, three clear glass crack pipes, and a razor blade were on the coffee table directly in front of Toups and Williams. Cash in the amount of $304.00 and sixteen rocks of cocaine were in a plastic container next to Williams. *Id.* at 912. The police had not seen Toups enter the residence while it was under surveillance, suggesting she was present for at least thirty minutes before the execution of the search warrant. *Id.* However, there was no evidence inside the residence to indicate she resided there. *Id.* She gave a false name when arrested. *Id.* She was charged with possession of the two pieces of cocaine discovered on the coffee table. *Id.*

The court in *Toups* found that most, if not all, of the factors used to determine whether a defendant exercised dominion and control sufficient to constitute constructive possession had been met in the case: (1) Toups inevitably had knowledge that drugs were in the area in that they were in plain view directly in front of her; (2) she had access to the area where the drugs were found; (3) she was in very close physical proximity to the drugs; and (4) the area was frequented by drug users, as the police received confidential information that Williams was conducting drug transactions, the police thereafter made a controlled purchase of drugs from Williams, and sixteen rocks of cocaine were on the sofa next to Williams. The court found that although there was no evidence of a specific relationship between Toups and Williams, it would be reasonable to conclude they were not strangers because Toups was with Williams for at least thirty minutes prior to his arrest, and Williams would

7

not sit at his coffee table with crack cocaine in plain view ready to be smoked with someone he did not know personally or someone who he did not know would be amenable to using the drugs. Further, the court noted, although there was no evidence of recent drug use, the fact that the drugs and paraphernalia were on the table in front of Toups and Williams combined with the fact that the paraphernalia contained drug residue suggested they were preparing to use, or had already used, the drugs. Lastly, the court noted the fact that Toups gave a false name upon arrest was evidence of consciousness of guilt. *Id.* at 913-14.

The defendant in the instant case disputes her knowledge that drugs were in the area, arguing "the drugs were not in plain view, but rather, were secreted inside the personal property of her co-defendant." This argument relies solely upon the defendant's own self-serving testimony that she first learned of the methamphetamine in the truck when she read a police report that stated the methamphetamine "was inside of a bicycle tire repair kit in the center console." The defendant claimed she did not repair any bicycles and did not know the drugs were in the bicycle repair kit. On cross-examination, however, she conceded she had not actually read in the report that the drugs were in a bicycle repair kit, but rather had seen it in a picture, which she further conceded was not in the police report.[2] The jury also heard a telephone call placed to the defendant by Rodriguez from jail several days after he and the defendant were arrested.[3] Rodriguez offered to "take" (*i.e.*, plead guilty to) "everything" except the gun. The defendant did not question Rodriguez as to what he meant by that.

Deputy Medvedev testified he found a "baggie" of methamphetamine in the center console of the truck. On cross-examination, while he conceded the

---

[2]The scientific analysis report submitted in this matter referenced a "DELUXE TUBE REPAIR KIT," containing less than 1 gram of methamphetamine. The police report referenced "[a]pproximately 3g of suspected [m]ethamphetamine (center console)."

[3]The defendant had posted bail and was out of jail.

methamphetamine was not in "open sight," he restated it was in the center console. He did not indicate the methamphetamine "baggie" was inside of a bag or a bicycle repair kit. He also indicated the center console was "[l]ess than a foot" from where the defendant was located in the truck, *i.e.*, the driver's seat, and was readily available and accessible to her. Deputy Medvedev testified the buprenorphine was in a small bag in the front of the vehicle.

Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of counts 4 and 7 and the defendant's identity as the perpetrator of those offenses. The evidence supported the jury's determination that the defendant exercised dominion and control sufficient to constitute possession in this case. The verdicts returned on counts 4 and 7 indicate the jury rejected the defendant's claim of lack of knowledge of the drugs. This case involved circumstantial evidence and the trier of fact reasonably rejected the hypothesis of innocence that the defendant was merely present in the area where the drugs were discovered or merely associated with Rodriguez, who actually controlled the drugs and the area where they were located. Even accepting the defendant's theory that the drugs belonged to Rodriguez, the defendant was still in a close enough relationship to Rodriguez that she was helping him move for days and sleeping in a truck with him. She also had access to the area where the drugs were found, *i.e.*, the truck she had borrowed from her father. Additionally, she was in close physical proximity to drugs, with the methamphetamine "less than a foot" from where she was located in the truck. Lastly, a glass smoking pipe generally used to smoke crack and methamphetamine was "in the vicinity of [the defendant and Rodriguez]." Thus, the evidence provided a basis for the jury to rationally conclude the defendant was at least in joint possession of the drugs in her father's truck, which she had been using

for at least a month, because she willfully and knowingly shared the right to control the drugs with Rodriguez. See *Smith*, 868 So.2d at 799.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). In accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See *State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam).

On the record before us, we find no error in the jury's determination that the evidence was sufficient to support the defendant's convictions herein. We likewise find no error in the trial court's denial of defendant's motions for new trial and post-verdict judgment of acquittal. The defendant's assignments of error are without merit.

## REVIEW FOR PATENT ERROR

This court routinely reviews criminal appeals for patent error. See La. Code Crim. P. art. 920. Our review has revealed the existence of a patent sentencing error in this case. The defendant moved for a new trial and a post-verdict judgment of acquittal, and the motions were denied. The trial court erred by immediately sentencing the defendant without waiting twenty-four hours after the denial of the

post-trial motions, as required by La. Code Crim. P. art. 873.[4] The record reflects no waiver of this time period by the defendant.

Nevertheless, in *State v. Augustine*, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in Article 873 will be considered harmless error where the defendant could not show that he suffered prejudice from the violation. See *State v. White*, 404 So.2d 1202, 1204-05 (La. 1981). In *Augustine*, the Louisiana Supreme Court concluded that prejudice would not be found if the defendant had not challenged the sentence imposed and the violation of the twenty-four hour delay was merely noted on patent error review. *Augustine*, 555 So.2d at 1334. In the instant case, the defendant has not assigned error to the trial court's failure to observe the twenty-four hour delay prior to sentencing, nor has she contested the sentences imposed. Accordingly, this patent sentencing error is harmless. See *State v. Major*, 2019-0621 (La. App. 1st Cir. 11/15/19), 290 So.3d 1205, 1214-15, writ denied, 2020-00286 (La. 7/31/20), 300 So.3d 398.

**CONVICTIONS AND SENTENCES AFFIRMED.**

---

[4]Louisiana Code of Criminal Procedure article 873 provides, "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." The same twenty-four hour delay is required in the case of the denial of a motion for post-verdict judgment of acquittal. *State v. Stafford*, 2020-0299 (La. App. 1st Cir. 2/22/21), 321 So.3d 965, 968 n.5.