**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 KA 0644

STATE OF LOUISIANA

VERSUS

MICHAEL RESHON HARPER

**Judgment Rendered:  NOV 0 9 2023**

\* \* \* \* \* \*

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 4251-F-2020
The Honorable Ellen M. Creel, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Prentice L. White
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Michael Reshon Harper

\* \* \* \* \* \*

**BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.**

**GUIDRY, C.J.**

The defendant, Michael Reshon Harper, was charged by bill of information with one count of second degree rape, in violation of La. R.S. 14:42.1(A)(1), to which he pled not guilty. Following a jury trial, the defendant was found guilty of the responsive verdict of attempted third degree rape, a violation of La. R.S. 14:43 & 14:27(A). He was then adjudicated a third felony offender, and the trial court imposed a sentence of nine years at hard labor pursuant to La. R.S. 15:529.1.[1] The defendant now appeals, designating as error the sufficiency of the evidence. For the following reasons, we affirm the defendant's conviction, multiple offender adjudication, and sentence.

## FACTS

In the early morning hours of August 4, 2018, fourteen-year-old Z.D.,[2] the victim in this case, was asleep in the home she shared with her mother and her younger brothers in Covington, Louisiana. Z.D. was then awoken and pulled out of her bed and into the bathroom by a man she later identified as the defendant, who was friends with her mother. The defendant told Z.D. that if she said anything, he would kill her. He proceeded to undress Z.D. and attempted to anally penetrate her. Z.D.'s mother then knocked on the door, at which point the defendant tried to push Z.D. into the bathroom closet. The defendant then left the residence, and the police were called. Following an investigation, during which

---

[1] We note that the trial court imposed the enhanced sentence without restricting the benefit of probation, parole, or suspension of sentence, as is required. See La. R.S. 15:529.1 & La. R.S. 14:43(B); see also State v. Chatman, 17-0132 (La. App. 1st Cir. 9/15/17), 2017 WL 4082285, *2 (unpublished). ("[A] sentence under the Habitual Offender Law calls for the conditions imposed in the reference statute."). Nonetheless, the "without benefit" provisions of La. R.S. 15:529.1 and La. R.S. 14:43(B) are self-activating. Thus, we need not take corrective action. See State v. Smith, 08-2129 (La. App. 1st Cir. 5/8/09), 2009 WL 1270320, *3 (unpublished), writ denied, 09-1293 (La. 2/5/10), 27 So. 3d 297; State v. Williams, 00-1725 (La. 11/28/01), 800 So. 2d 790, 799; La. R.S. 15:301.1(A).

[2] Because this charge involves a sex offense, we reference the victim by her initials. See La. R.S. 46:1844(W).

2

the defendant made a written and oral statement[3] and provided a DNA sample, the defendant was arrested for the rape of Z.D.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, the defendant argues that the evidence was insufficient to support his conviction for attempted third degree rape beyond a reasonable doubt. Specifically, the defendant contends that the State failed to prove that he either penetrated or attempted to penetrate Z.D.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Livous, 18-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1039, writ denied, 18-1788 (La. 4/15/19), 267 So. 3d 1130; see also La. C.Cr.P. art. 821(B). When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove . . . must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; Livous, 259 So. 3d at 1040.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. State v. Mire, 14-2295 (La. 1/27/16), 269 So. 3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element

---

[3] The defendant was advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prior to giving a statement.

of the crime. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. Livous, 259 So. 3d at 1040.

Louisiana Revised Statutes 14:41(A) defines rape as "the act of anal . . . sexual intercourse . . . committed without the person's lawful consent." Louisiana Revised Statutes 14:41(B) further provides that "any sexual penetration . . . however slight, is sufficient to complete the crime." Louisiana Revised Statutes 14:43(A)(4) defines third degree rape as "a rape committed when the anal, oral, or vaginal sexual intercourse [occurs] . . . without the consent of the victim."

Attempt is defined by La. R.S. 14:27(A) as follows:

Any person who, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Specific intent is therefore a required element for a conviction of attempted third degree rape. Specific intent is defined by La. R.S. 14:10(1) as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Thus, to support a conviction for attempted third degree rape, the State had to prove beyond a reasonable doubt that the defendant: (1) had the specific intent to commit third degree rape; and (2) that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. See La. R.S. 14:43 and La. R.S. 14:27; see also State v. Walston, 22-0317 (La. App. 1st Cir. 11/4/22), 2022 WL 16707997, *2 (unpublished), writ denied, 22-01809 (La. 9/19/23), ___So. 3d ___.

Z.D. testified at trial that on the night of August 4, 2018, she was asleep in her bed when the defendant, her mother's friend whom Z.D. had met on one prior occasion, came into her room and woke her up. He then pulled her into the

4

bathroom, closed and locked the bathroom door, and kept the light turned off. He told Z.D. that if she said anything, he would kill her. He then began kissing Z.D.'s neck, touching her private parts, and removing his clothes. Z.D. testified that the defendant then bent her forward over the sink and attempted to anally penetrate her. At that point, Z.D.'s mother began calling her name and knocking on the bathroom door. The defendant then attempted to hide Z.D. in the bathroom closet. However, the closet contained the home's water heater and Z.D. could not fit. The defendant then opened the bathroom door and walked out, stating "I didn't do nothing." When asked to clarify whether the defendant's penis actually penetrated her, Z.D. confirmed that it did "a little bit." After the police were called, Z.D. was transported to Children's Hospital in New Orleans for an examination.

Shortly after the incident, Z.D. was brought to the Children's Advocacy Center (CAC) for an interview. However, the video recording of that interview failed to pick up any audio, and none of the interview could be heard in the recording. Accordingly, Z.D. spoke with CAC a second time approximately two years after the incident occurred. Z.D.'s second CAC statement was largely consistent with her trial testimony. She explained that the defendant forced her into the bathroom and threatened to kill her if she said anything. Z.D. affirmatively stated that the defendant penetrated her. However, Z.D. also stated that August 4, 2018 was the first time she had ever seen the defendant, and that the defendant fondled her breasts and asked her to perform oral sex on him, which she refused.

Dr. Emily Harrison, a pediatrician and expert in the field of pediatrics, examined Z.D. at Children's Hospital in New Orleans after the incident occurred. Dr. Harrison testified that as part of Z.D.'s examination she completed a rape kit, during which multiple swabs were collected from Z.D.'s person. Additionally, Dr. Harrison performed a BlueMax light scan wherein the patient's body is scanned for

5

potential biological material. The BlueMax light scan suggested potential biological material located on Z.D.'s left buttock, and a swab of that area was taken as well. The swabs were then submitted for DNA testing. Dr. Harrison also testified that Z.D. reported to her that the defendant's penis touched her anus, and when asked if the defendant penetrated her, Z.D. replied that "he tried."

Tara Bell, a forensic DNA analyst at the St. Tammany Parish Coroner's Office and an expert in the field of DNA analysis, analyzed the DNA evidence collected in this case. Ms. Bell testified that swabs from Z.D.'s perineum, breasts, navel, neck and ear, and inner thigh produced a DNA profile consistent with the defendant's DNA profile. The swab that was taken pursuant to the BlueMax light scan also produced a DNA profile consistent with the DNA sample provided by the defendant. Accordingly, Ms. Bell testified that the defendant could not be excluded as the contributor for DNA profiles found on Z.D.'s perineum, breasts, navel, neck and ear, inner thigh, and the BlueMax light scan swab.

The defendant did not testify in this case. However, he did provide a written and oral statement to police officers, both of which were presented at trial. In both of his statements, the defendant denied any wrongdoing and told police that when he went to use the bathroom at Z.D.'s mother's house, a man named Miguel Williams was already in there. According to the defendant, he entered the bathroom after Mr. Williams exited. While in the bathroom, Z.D.'s mother began calling Z.D.'s name. Soon after, Z.D. was found in the bathroom closet. The defendant claimed that he did not know that Z.D. was in the closet while he was using the bathroom, and insisted that his DNA would not be found on her person.

After a thorough review of the record, we find that a rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant had the specific intent

6

to commit third degree rape, and that he performed an act in furtherance of accomplishing that offense.

If believed, the testimony of the victim alone, with no other evidence, is sufficient to prove the elements of the offense. Moreover, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness is sufficient to support a factual conclusion. State v. Alexander, 14-1619 (La. App. 1st Cir. 9/18/15), 182 So. 3d 126, 131, writ denied, 15-1912 (La. 1/25/16), 185 So. 3d 748.

Herein, Z.D.'s testimony and pre-trial statements consistently established that the defendant forcibly removed her from her bed while she was sleeping, pulled her into the unlit bathroom, locked the door, and told her that she would be killed if she said anything. He then began to kiss and fondle her, before pulling down her pants and attempting to anally penetrate her against her will. This testimony, by itself, establishes each element of attempted third degree rape.

Furthermore, in addition to Z.D.'s testimony and pre-trial statements, the jury was presented with extensive DNA evidence which corroborated Z.D.'s allegations that the defendant fondled her breasts and kissed her neck before he tried to anally penetrate her. DNA which was consistent with the defendant's was found on Z.D.'s breasts, navel, neck, ear, inner thigh, perineum, and left buttock.

The defendant's argument that the State failed to prove either penetration or attempted penetration where Z.D. stated, at various points, that the defendant tried to penetrate her, that he did in fact penetrate her, and that he penetrated her "a little bit" is unfounded. Initially, we note that actual penetration is not an element of attempted third degree rape. What is required, however, is proof that the defendant specifically intended to commit third degree rape, and that he took a step in furtherance of that goal. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the

7

credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of that weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. Alexander, 182 So. 3d at 131.

It is clear from the record that Z.D. herself was unsure whether penetration actually occurred. However, each of Z.D.'s statements established that the defendant forced Z.D. into the bathroom, began fondling and undressing her, and threatened to kill her if she said anything. Given this information, a rational juror could have concluded that the defendant had the specific intent to commit third degree rape. Furthermore, given the presence of the defendant's DNA on Z.D.'s perineum, buttocks, and inner thigh, a rational juror could have concluded that the defendant attempted to anally penetrate Z.D., regardless of whether penetration actually occurred. See State v. Henderson, 22-0795 (La. App. 1st Cir. 2/24/23), 361 So. 3d 1028, 1033.

Finally, the defendant's statements accusing Mr. Williams of being the individual in the bathroom with Z.D. were belied by the fact that Mr. Williams also provided a DNA sample, and he was excluded as a possible donor to the DNA found on Z.D.'s person. Lying or purposeful misrepresentations reasonably raise the inference of a "guilty mind" and can be indicative of an awareness of wrongdoing. State v. Dyson, 16-1571 (La. App. 1st Cir. 6/2/17), 222 So. 3d 220, 234, writ denied, 17-1399 (La. 6/15/18), 257 So. 3d 685.

Accordingly, we cannot say that the fact finder's determination was irrational under the facts and circumstances presented. See State v. Ordodi, 06-0207 (La. 11/29/06), 946 So. 2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis

8

of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

This assignment of error is without merit.

## PATENT ERROR REVIEW

This court conducts an independent review of the entire record, including a review for error under La. C.Cr.P. art. 920(2). Our review has revealed the existence of a patent sentencing error in this case.

Defendant herein filed a motion for new trial and a motion for post-verdict judgment of acquittal, both of which the trial court denied just prior to the imposition of sentence. Louisiana Code of Criminal Procedure art. 873 mandates, in pertinent part, that "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled . . . [unless] the defendant expressly waives a delay[.]" There is no indication in the record before us that the defendant waived the twenty-four-hour sentencing delay. Therefore, the trial court erred by sentencing the defendant immediately after ruling on the motion for new trial.

Nevertheless, the Louisiana Supreme Court has indicated that a failure to observe the twenty-four-hour delay mandated by La. C.Cr.P. art. 873 will be considered harmless error where the defendant cannot show that he suffered prejudice from the violation, and sentencing is not challenged on appeal. State v. Augustine, 555 So. 2d 1331, 1333-34 (La. 1990). Herein, the defendant has made no such challenge to his sentence, nor is there any indication from the record that the violation caused the defendant prejudice. Accordingly, any error in the trial court's failure to observe the twenty-four-hour delay was harmless beyond a reasonable doubt, and does not require a remand for resentencing. See State v. Dawson, 19-1612 (La. App. 1st Cir. 11/17/20), 316 So. 3d 77, 90, writ denied, 21-00217 (La. 5/4/21), 315 So. 3d 222.

9

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**