STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0878

STATE OF LOUISIANA

VERSUS

MICHAEL STEVEN WHITE

Judgment Rendered: **JUN 0 4 2024** _____

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 3984-F-2022

The Honorable Scott Gardner, Judge Presiding

Andrew B. Joyner                          Counsel for Appellee,
Matthew Caplan                            State of Louisiana
Assistant District Attorneys
J. Collin Sims
District Attorney
Covington, Louisiana

Bertha M. Hillman                         Counsel for Defendant/Appellant,
Covington, Louisiana                      Michael Steven White

BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.

McClendon, J. concurs

Hester, J. concurs by [signature]

## MILLER, J.

The defendant, Michael Steven White, was charged by bill of information with six counts of simple burglary, violations of La. R.S. 14:62.[1] He pled not guilty; however, following a jury trial, the defendant was found guilty as charged on all six counts. The defendant was initially sentenced, on each count, to imprisonment at hard labor for twelve years, with the sentences to run concurrently. The State then filed a habitual offender bill of information, alleging the defendant was a fourth-felony habitual offender under La. R.S. 15:529.1,[2] which the defendant admitted.[3] Finding the defendant to be a fourth-felony habitual offender, the trial court vacated the original sentences and resentenced the defendant, on each count, to imprisonment at hard labor for twenty years, without benefit of probation or suspension of sentence, with the sentences to run concurrently. The defendant now appeals, challenging the sufficiency of the evidence and the lack of a "not guilty" responsive verdict on the jury form. For the following reasons, we affirm the defendant's convictions, habitual offender adjudication, and sentences.

## STATEMENT OF FACTS

On July 18, 2022, at approximately 10:38 p.m., Deputy Tristan Wenturine ("Deputy Wenturine") of the St. Tammany Parish Sheriff's Office Criminal Patrol

---

[1] The defendant was also charged with one count of possession of drug paraphernalia, a violation of La. R.S. 40:1023(C), for which the State entered a nolle prosequi.

[2] The State identified the predicate offenses as (1) the defendant's August 11, 2015 conviction for vehicular homicide under Twenty-Second Judicial District Court Docket No. 558887, (2) the defendant's June 13, 2005 conviction for three counts of theft ($500-$1500) under Twenty-Second Judicial District Court Docket No. 395203, and (3) the defendant's June 1, 2005 conviction for simple burglary under Twenty-Second Judicial District Court Docket No. 362713.

[3] The trial court properly advised the defendant of his rights under the Habitual Offender Law, i.e., the right to a formal hearing wherein the State would be required to prove the allegations of the habitual offender bill and the right to remain silent. State v. Piper, 2018-1796 (La. App. 1st Cir. 9/27/19), 287 So. 3d 13, 26 ("[w]hen the defendant's guilt [as a habitual offender], however, is proven by his own stipulation or admission without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error.").

2

Division responded to a call concerning a suspicious person located at J&J Auto Brokers ("J&J"), a used vehicle dealership, in Slidell, Louisiana. Upon his arrival, Deputy Wenturine noticed a male (later identified as the defendant) standing next to a vehicle, which was backed into a small driveway facing the highway in a poorly lit area. Deputy Wenturine also noted J&J, given the time of day, was closed for business. Upon approaching the defendant, Deputy Wenturine observed "wiring and miscellaneous stuff" in the back of the defendant's vehicle, which based on his past experience was consistent with "people that are going through or ripping out car parts and things like that." However, Deputy Wenturine was unable to confirm whether any of those items were stolen. He further observed that the back hatch and rear door of the defendant's vehicle were open. When Deputy Wenturine scanned the area with his flashlight, he also observed that the doors of multiple vehicles in the car lot were open. When he inquired why the defendant was looking at cars, the defendant replied that he was "[s]eeing if he [could] use anything to strip or buy, flip, and sell." Later, the defendant admitted to Deputy Wenturine that he did, in fact, open the vehicles' doors but claimed he was looking for a replacement vehicle for his mother.

Deputy John Thornhill ("Deputy Thornhill") of the St. Tammany Parish Sheriff's Office also responded to J&J following a report of subjects "going through vehicles" at J&J. Upon his arrival at J&J, Deputy Thornhill contacted his partner, Deputy Wenturine, who had the defendant in custody. Deputy Thornhill also observed the "miscellaneous wiring" located in the defendant's vehicle. Deputy Thornhill then identified and observed six vehicles whose doors and/or engine compartments were open upon his arrival to J&J: a silver Lexus sedan, a silver Volkswagen sedan, a beige Chevrolet Silverado truck, a red Ford truck, a white Suzuki sedan, and a white Dodge Ram truck. At trial, Deputy Thornhill specifically testified that it did not appear that the Lexus or Volkswagen, other than

3

having the doors open, had been tampered with. As to the Dodge Ram truck, the doors were opened and Deputy Thornhill noted it appeared to have been tampered with or had pieces removed, but did not describe how it had been tampered with or what was missing. As to the Suzuki sedan, the doors and engine compartment hood were open, and Deputy Thornhill believed it had been tampered with, as the radio was missing. Deputy Thornhill also observed the Ford truck, with both doors open, and at the driver's side door, he saw a pack of Lucky Strike cigarettes on the ground. Though Deputy Thornhill found Lucky Strike cigarettes in the defendant's vehicle and was told by the defendant that he smoked said cigarettes, Deputy Thornhill did not observe any damage to the interior of the Ford truck. Lastly, Deputy Thornhill observed the Chevrolet truck, with doors open, and he testified the radio and "head unit" were missing.

Norman Ducre ("Ducre"), the owner of J&J, testified that when leaving J&J for the day, he typically left the vehciles' doors unlocked. According to Ducre, he left the doors unlocked to prevent further expense from individuals breaking the vehicles' windows to then burglarize them. On the night of the alleged burglaries, Ducre left the car lot around 7:00 or 7:30 p.m., went home, and then went to play pool. While he was playing pool, he received a phone call from a friend saying he had "seen somebody in one of the cars." Upon receiving the information from his friend, Ducre called law enforcement and drove to J&J. While waiting for law enforcement's arrival, Ducre noticed the engine compartment of one of his vehicles was open and an interior light was on. More specifically, upon his arrival to J&J, Ducre observed "someone in one of [his] cars[.]" Though Ducre did not identify which vehicle the defendant was allegedly in, he testified he did not leave J&J that day with the vehicles' doors and/or engine compartments open. Additionally, Ducre stated he had never met the defendant and did not give him, or anyone else, permission to be at J&J, or otherwise look through the vehicles, on the

4

night in question. While it is possible for individuals to stop at J&J after hours to look at cars on the lot, Ducre testified it was not normal for people to be there as late as 9:00 or 10:00 p.m. Moreover, even if individuals are at J&J after hours, Ducre believed it is not common that the individual would open the doors and look into the vehicles' compartments.

Lieutenant Devon Coulon ("Lieutenant Coulon") of the St. Tammany Parish Sheriff's Office testified that he was the shift supervisor on the night of the alleged burglaries, and he responded to J&J along with Deputy Wenturine and Deputy Thornhill. Upon Lieutenant Coulon's arrival, he spoke with the defendant, who admitted to opening the doors of a Volkswagen vehicle but stated that he intended to close them. At trial, Lieutenant Coulon also provided testimony that the defendant indicated he was working in conjunction with his cousin on the night of the alleged burglaries. However, further investigation did not indicate that the defendant and his cousin were working together that night.

Linda Henley ("Henley"), the defendant's mother, testified that following the defendant's return from imprisonment, the two lived together, with the defendant employed as a mechanic, reassembling and refurbishing automotive parts salvaged from junkyards. Though Henley initially testified it would be abnormal for the defendant to have "wiring and other things in his vehicle[,]" Henley later stated it was common for the defendant to have various items, tools, and wires in the back of his vehicle, as "most of the time he had some wiring in there[,]" he "[p]robably" had wiring in the back of his vehicle on the night of the alleged burglary, and that the defendant would normally "pick[] up wiring." Further, when shown a picture of the "big ball of wiring" found in the back of the defendant's vehicle, Henley could not identify it. Additionally, because of damage sustained during Hurricane Ida, Henley stated one of her two vehicles became inoperable, and she and the defendant were in the process of looking for a

5

replacement, often driving to various car lots on the weekends to inspect and identify potential options. Henley testified it was normal for the defendant to stop at a car lot late at night. She further stated that the defendant "would open the doors and he would check inside and smell it" to determine whether she would be sensitive to the interior conditions, as he knew Henley needed a vehicle without any smoke or mold damage, due to her asthma. Henley also noted the two would sometimes visit businesses that were closed for the day, would "open the doors[,] [and] peek inside[.]" Additionally, Henley testified the defendant, in the process of identifying a new vehicle for her, would open the engine compartment hoods, but that she was not present with the defendant on the night of the alleged burglaries.

Lastly, Jennifer Seacrest ("Seacrest"), the defendant's girlfriend, testified that she believed the defendant was in search of a replacement vehicle for his mother at the time of the alleged burglaries. However, Seacrest was not present at J&J on the night in question.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant argues the evidence presented at trial was insufficient to support his convictions for simple burglary. Specifically, though the defendant admits to his identity and that he *opened* the doors of vehicles and the hood of one vehicle, he argues the State nevertheless failed to meet its burden of proving he *entered* the interior of the vehicles following his opening of them. He avers "[t]here was no evidence that [he] entered the enclosed interior of the vehicles. He simply opened the car doors and hood of one vehicle. With no proof that [he] entered the vehicles after he opened the car doors and hood, the State failed to meet its burden of proving an essential element of the crime." The defendant's argument on appeal is strictly limited to the "entry"

6

element of simple burglary. Thus, our review is limited to the sufficiency of the evidence concerning the "entry" element of simple burglary.[4]

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime and the defendant's identity proven beyond a reasonable doubt based on the entirety of the evidence, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Oliphant, 2013-2973 (La. 2/21/14), 133 So. 3d 1255, 1258-59 (per curiam); see also La. C.Cr.P. art. 821(B).

When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. Oliphant, 133 So. 3d at 1258; State v. Dunn, 2021-0630 (La. App. 1st Cir. 12/22/21), 340 So. 3d 77, 83-84, writ denied, 2022-00095 (La. 4/5/22), 335 So. 3d 834. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror the defendant is guilty beyond a reasonable doubt. State v. Dorsey, 2010-0216 (La. 9/7/11), 74 So. 3d 603, 633.

The Jackson standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. State v. Mire, 2014-2295 (La. 1/27/16), 269 So. 3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the

---

[4] We note, and the State correctly points out, that, on appeal, the defendant does not challenge the sufficiency of the evidence presented at trial concerning his identity or the required specific intent to commit a felony or theft within the vehicles.

7

circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Gardner, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So. 3d 265, 267. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. State v. Livous, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1040, writ denied, 2018-1788 (La. 4/15/19), 267 So. 3d 1130.

Louisiana Revised Statutes 14:62(A) defines simple burglary, in pertinent part, as the "unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein[.]" Simple burglary requires specific intent, which is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Such a state of mind can be formed in an instant and need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the offender. State in Interest of D.T., 2019-1284 (La. App. 1st Cir. 2/21/20), 2020 WL 862311, at *2 (unpublished). Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. State v. Cousan, 94-2503 (La. 11/25/96), 684 So. 2d 382, 390.

Additionally, the "entry" element of the crime of simple burglary is satisfied when there is evidence that any part of the defendant's person intrudes, even momentarily, into the vehicle. State in Interest of P.M., 2015-0834 (La. App. 4th Cir. 12/16/15), 186 So. 3d 693, 695, writ denied, 2015-2327 (La. 3/14/16), 189 So. 3d 1072. There is no requirement that "entry" be "into a part of the vehicle capable of or designed to accommodate a person." State v. Pierre, 320 So. 2d 185, 188 (La.

8

1975) ("It is sufficient if the entry into the vehicle is accomplished, as in this case, by opening the hood and stealing the battery from the engine compartment."); cf. State v. Bickham, 2018-1006 (La. App. 1st Cir. 11/15/19), 2019 WL 6044319 at *3 (unpublished) (defendant "digging through" motorcycle saddlebags does not satisfy the "entry" requirement of simple burglary, as saddlebags are not integral parts to the interior of a motorcycle). Lastly, it is not necessary for a simple burglary conviction that an actual theft occur. State in Interest of E.M., 2022-0307 (La. App. 1st Cir. 9/16/22), 2022 WL 4285936, *3 (unpublished).

After a thorough review of the record, we find that a rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant entered the six identified vehicles located at J&J on the night in question. While observing the defendant at J&J prior to law enforcement's arrival, Ducre affirmatively stated he saw the "engine and the car open light on" as well as the defendant in one of his vehicles. Ducre stated he did not leave any vehicle doors and/or engine hoods open prior to leaving for the day. Upon law enforcement's arrival, they observed six vehicles whose doors and/or engine hoods were open. Further, when initially questioned by Deputy Wenturine concerning his actions, the defendant admitted to "[s]eeing if he [could] use anything to strip or buy, flip, [or] sell." Moreover, the defendant admitted to Lieutenant Coulon that he opened some of the vehicle doors, and the Lucky Strike cigarettes found on the ground near other vehicles matched the same cigarettes found in the defendant's vehicle.

Additionally, the jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. See Mire, 269 So. 3d at 700-01; State v. Eby, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So. 3d 420, 426, writ

9

denied, 2018-0762 (La. 2/11/19), 263 So. 3d 1153. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion. State v. Dorsey, 2010-0216 (La. 9/7/11), 74 So. 3d 603, 634, cert. denied, 566 U.S. 930, 132 S. Ct. 1859, 182 L. Ed. 2d 658 (2012).

Accordingly, in reviewing the evidence presented at trial, we cannot say the jury's determination that the defendant was guilty of six counts of simple burglary was irrational under the facts and circumstances presented. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam). To otherwise accept a hypothesis of innocence that was not unreasonably rejected by the factfinder, a court of appeal impinges on a factfinder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See Mire, 269 So. 3d at 703. Accordingly, this assignment of error lacks merit.

## ERROR ON JURY VERDICT FORM

In his second assignment of error, the defendant argues an "error patent" is present on the face of the pleadings; that is, the verdict form presented to the jury did not contain a "not guilty" responsive verdict. See La. C.Cr.P. art. 814(A)(50).[5] As such, the defendant contends this omission constitutes reversible error. The defendant is correct in pointing out the deficiency in the verdict form, which contains the following responsive verdicts: "Guilty of Simple Burglary," "Guilty of

---

[5] Louisiana Code of Criminal Procedure article 814(A)(50) provides the following responsive verdicts for simple burglary: "Guilty[,]" "Guilty of attempted simple burglary[,]" "Guilty of unauthorized entry of a place of business[,]" "Guilty of attempted unauthorized entry of a place of business[,]" and "Not guilty." The verdict form did not contain the responsive verdicts of "Guilty of unauthorized entry of a place of business," "Guilty of attempted unauthorized entry of a place of business," and "Not guilty.

10

Attempted Simple Burglary," and "Guilty." The verdict form does not contain a responsive verdict of "Not Guilty" as required by La. C.Cr.P. art. 814.

Louisiana Code of Criminal Procedure article 920(2) notes an error patent as "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Generally, however, any alleged error concerning the sufficiency of the list of responsive verdicts given the jury is not reviewable under Article 920(2) and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error. State v. Craddock, 307 So. 2d 342 (La. 1975); see also State v. Hanson, 41,195 (La. App. 2nd Cir. 8/23/06), 938 So. 2d 1147, 1152, writ denied, 2006-2318 (La. 4/20/07), 954 So. 2d 158 (omission of responsive verdicts of simple rape and attempted simple rape from verdict form not reviewable under Article 920(2)); State v. Williams, 2017-0585 (La. App. 1st Cir. 11/16/17), 236 So. 3d 604, 607 ("Jury charges are beyond the permissible scope of review under [Article] 920(2).").

In Craddock, the court noted that absent an objection, a defendant may not on appeal complain of the judge's charge to the jury, even though the charge may happen to appear in the record. The court went on to hold that the alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, was not reviewable under Article 920(2) and could not be considered unless an objection was made in the trial court in time for the trial court to correct the error. Craddock, 307 So. 2d at 343.

Furthermore, La. C.Cr.P. art. 841 pertinently provides, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." The contemporaneous objection rule provides the trial court notice and the opportunity to cure an alleged irregularity or error, and prevents a party from gambling for a favorable outcome then appealing when the error could have

been addressed by an objection. The failure to make a contemporaneous objection prior to the verdict waives the alleged error or irregularity and precludes the defendant from raising it on appeal. State v. Thompkins, 2018-1032 (La. App. 1st Cir. 2/27/19), 273 So. 3d 346, 349-50, writ denied, 2019-00666 (La. 9/17/19), 278 So. 3d 973; see also Williams, 236 So. 3d at 607.

However, despite the lack of a contemporaneous objection, jury instructions may be reviewed on appeal when the alleged error violates a fundamental due process right and is therefore structural. See State v. McCasland, 2016-1178 (La. App. 1st Cir. 4/18/17), 218 So. 3d 1119, 1129. Here, we note that while the verdict form does not contain a responsive verdict of "Not Guilty," the trial court orally instructed the jury that if they were not convinced beyond a reasonable doubt of the defendant's guilt, they should return a not guilty verdict. Therefore, when coupled with the trial court's oral instruction to the jury, the lack of a "Not Guilty" responsive verdict on the jury form was not structural and, as such, did not violate fundamental requirements of due process. See Williams, 236 So. 3d at 607; McCasland, 218 So. 3d at 1129. Accordingly, this assignment of error lacks merit.

We have been unable to find where the omission of "Not Guilty" from a verdict form has been reviewed by this court on appeal. The exclusion of "Not Guilty" as an option on the verdict form is a particularly egregious omission which we find troubling. Yet, the jurisprudential framework does not allow us to distinguish this error from other charging errors since no contemporaneous objection was lodged. As a court of appeal, we are bound to follow the decisions of the Louisiana Supreme Court. The holding in Craddock is unequivocal. A different interpretation of Craddock and its progeny, or a narrowing of the rule, is necessarily left to the Louisiana Supreme Court.

**CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES ARE AFFIRMED.**